AGNEW, APPELLANT, *v.* PORTER ET AL., APPELLEES.

---

*CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.

(No. 69-440—Decided July 15, 1970.)

*Messrs. Topper & Alloway, Mr. John J. Duffey, Messrs. Schwenker, Reeves & Langley,* and *Mr. Morton Y. Reeves,* for appellant.

*Messrs. Zelkowitz, Barry & Cullers* and *Mr. Richard A. Yoss,* for appellee.

LEACH, J. Appellant, in his brief and in oral argument before this court, raises questions only as to the person-

al liability of appellee Porter. The claim against the city apparently has been abandoned.

The last paragraph of R. C. 701.02 provides:

"Policemen shall not be personally liable for damages for injury or loss to persons or property and for death caused while engaged in the operation of a motor vehicle while responding to an emergency call."

The first contention of appellant is that, despite such language, a policeman is personally liable for damages for injury to a person caused by the operation of a motor vehicle, even though responding to an emergency call, if such injury was caused by an act of negligence which would constitute a violation of a provision of R. C. Chapter 4511; that to be entitled to the immunity from personal liability granted by R. C. 701.02, the policeman must be engaged in the "lawful operation" of the motor vehicle.

While apparently conceding that the above quoted language of R. C. 701.02, standing alone, is unambiguous and could not permit such construction, appellant asserts that since this language was enacted by the General Assembly in 1937 (117 Ohio Laws 482), and since R. C. Chapter 4511 was enacted in 1941 as a part of the Uniform Traffic Act (119 Ohio Laws 766), those statutes must be read in pari materia and, when so read, require a construction that complete immunity from liability for personal injury caused by the operation of a motor vehicle while responding to an emergency call, granted policemen in 1937, was modified in 1941 so as to thereafter exclude from the grant of immunity all cases where the injury was caused by the operation of a motor vehicle by a policeman in violation of any of the statutes enacted as part of the Uniform Traffic Act.

Specifically, it is the contention of appellant that duties of care, the violation of which is negligence, are imposed on policemen by R. C. Chapter 4511, and especially R. C. 4511.03 (driver of emergency vehicle responding to emergency call, upon approaching stop signal or sign "shall slow down as necessary for safety to traffic, but may

proceed cautiously * * * with due regard for the safety of all persons using the street or highway''); R. C 4511.24 (excusing driver of emergency vehicle responding to emergency call from prima-facie speed limitations when audible signals are sounded, but also providing that this ''does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons using the street or highway''); and R. C. 4511.45 (giving emergency vehicles, equipped with flashing red light and giving audible signal, the right of way, but also providing that: ''this section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property upon the highway'').[1]

Essentially, this same claim was made to and rejected by this court in *McDermott* v. *Irwin* (1947), 148 Ohio St. 67. We held therein, as indicated by the syllabus:

''1. Section 3714-1, General Code [R. C. 701.02], is a constitutional enactment and was not repealed by the enactment of the Uniform Traffic Act (Section 6307-1 *et seq.*, General Code [R. C. 4511.01 *et seq.*]).

''2. Under Section 3714-1, General Code, it is a full defense to an action against a policeman for negligence while engaged in the operation of a motor vehicle that he was at the time of his alleged negligence responding to an emergency call.

''3. Where a jury finds, in answer to an interrogatory, that such defendant policeman while engaged in the operation of a motor vehicle was responding to an emergency call, it is the duty of the trial court to sustain defendant's motion to set aside the verdict of the jury assessing damages against such policeman. (Section 3714-1, General Code.)''

From an examination of the *McDermott case*, it ap-

---

[1]Reference is to these statutes as in effect at the time of the accident, January 14, 1966. Each has been amended by additional or substituted reference to a "public safety vehicle," but such amendments have no relevancy to the question here under consideration.

pears that the plaintiff therein claimed that an ambulance, driven by a policeman, "* * * failed to sound siren, whistle or bell and came into the intersection through the red light and on the wrong side of the highway"; that the jury, by returning its verdict in favor of the plaintiff, found negligence on the part of the defendant but also, in answer to an interrogatory, found that the policeman was "answering an emergency call." Thus, the *McDermott case* necessarily stands for the proposition that even after 1941 a policeman is absolved from personal liability if he is "responding to an emergency call," although he be negligent and in violation of provisions of the Uniform Traffic Act by failing to sound an audible signal, failing to proceed cautiously through a red light, or driving on the wrong side of the highway.

Thus it would appear that the holding in *McDermott* is dispositive of appellant's first contention. Appellant, however, seeks to avoid the holding therein by asserting, in effect, that this court there dealt with the question as being one only of "implied repeal"; that no consideration was given to the question of the interpretation of both acts by application of the principle of reading both *in pari materia;* that the application of this principle of statutory interpretation, and giving full effect to both acts, would compel the conclusion that the General Assembly in 1941 intended to limit the immunity granted policemen in 1937 to cases of negligent conduct on the part of the policemen *other* than those involving a violation of the Uniform Traffic Act; and that any other interpretation would render essentially meaningless the specific requirements of the Uniform Traffic Act as applied to policemen.

In so asserting, appellant overlooks the fact that any determination of whether a prior act has impliedly been repealed necessarily involves the application of the principles of examining the two *in pari materia.* That this court applied such principle in *McDermott* is evident from the language of Turner, J., in the opinion (pp. 69-70):

"Under Section 3714-1, General Code, it is a full defense to an action against a policeman for negligence while

engaged in the operation of a motor vehicle that he was at the time of his alleged negligence responding to an emergency call. We are unable to find anything in the Uniform Traffic Act inconsistent with, irreconcilable with, repugnant to or contradictory of such last-mentioned provision for the defense of a police officer when sued for the result of such negligence.

"Whether a policeman may be guilty of a misdemeanor or felony for the violation of the traffic act is not before us."

Of course, it is true that R. C. Chapter 4511 does prescribe statutory duties of care to be followed by a policeman operating an emergency vehicle. A violation of such statutory duties would authorize a finding of "negligence," which, except for the immunity provision of R. C. 701.02, might be the basis for the imposition of personal civil liability. Prior to the enactment of the immunity statute, a policeman was personally liable for the negligent operation of a motor vehicle, regardless of whether done in the performance of official duties. *United States Fidelity & Guaranty Co.* v. *Samuels* (1927), 116 Ohio St. 586. However, as should be apparent, the terms "negligence" and "liability" are not synonymous. Thus, the imposition of duties, as to which a violation thereof would be "negligence," is not inconsistent with and in no way affects the application of a statute granting immunity from "liability" for the same acts.

Applying the principles implicit in a *in pari materia* examination, we believe that the 1941 imposition of statutory duties of care on a policeman operating an emergency vehicle does not render substantially meaningless, ineffective or inoperative the 1937 Act. The violation of such a statutory duty, upon conviction, may warrant the imposition of the penalty prescribed by R. C. 4511.99(F). It might also justify departmental disciplinary action. As an act of contributory negligence it could bar civil recovery by the policeman for his own injuries. Even a passenger in the emergency vehicle may be denied recovery on the basis that the violation of the standard of care impos-

ed on the operator of the emergency vehicle constituted "not proceeding in a lawful manner," so as to cause the emergency vehicle to lose its preferential right-of-way status. *Parton* v. *Weilnau* (1959), 169 Ohio St. 145. Such a violation can bar recovery by the municipal corporation for damage to its police cruiser. *Centerville* v. *Benbow* (1956), 102 Ohio App. 333. It also can support a money judgment against a policeman, even though operating a police vehicle on official business, where he is not "responding to an emergency call." *Lingo* v. *Hoekstra* (1964), 176 Ohio St. 417.

Appellant concedes that there is some life left in the 1937 immunity grant and thus that this court was correct in *McDermott* in holding that G. C. 3714-1 (R. C. 701.02) was not "repealed" by the enactment of the Uniform Traffic Act. He then asserts, in effect, that the actual *holding* therein was in error and that such error could be rectified by now construing the last paragraph of R. C. 701.02 as granting immunity for "common-law negligence," but not granting immunity for negligence involving the violation of a traffic statute. The basis of common-law negligence is a failure to exercise "ordinary care," and the language of the pertinent sections of R. C. Chapter 4511 applies essentially the same test, each using the term "due regard" for the safety of others. There is no essential difference between "ordinary care" for the safety of others and "due regard" for the safety of others. Thus, it is difficult to envisage a case which would involve "common-law" negligence by a policeman operating a motor vehicle while responding to an emergency call which would not also involve a violation of the requirements of R. C. 4511.03, R. C. 4511.24, or R. C. 4511.45. Irrespective of this argument, however, we conclude that, in any event, R. C. 701.02 is a full defense to an action for damages for personal injury against a policeman for negligence while engaged in the operation of a motor vehicle while responding to an emergency call, including negligence resulting from a violation of any of the provisions of R. C. Chapter 4511.

Appellant makes the additional contention that even if R. C. 701.02 be so construed, a jury question was presented as to whether appellee was "responding to an emergency call." Appellee does not dispute the facts contained in the affidavits presented in support of the motion for summary judgment, to the effect that on the night of January 14, 1966, a fight involving approximately 50 persons broke out at the Mt. Vernon High School following a basketball game; that a policeman at the scene called headquarters requesting immediate assistance; that headquarters radioed appellee, informing him that there was a large fight or brawl at the high school and that the officers there needed help immediately; that the policemen of Mt. Vernon had been instructed, by orders of the Chief of Police, that a call by a fellow officer was to be treated as an emergency call requiring immediate response; and that appellee was driving in response to such a call at the time of the accident.

Appellant asserts, however, that the officer who called for help did not say that he was in any personal danger or that any of the students were in substantial danger of injury; that appellee was only given the information that "there was a large fight or brawl at the high school and that the officers there needed help immediately," with no other information being supplied to appellee; and thus that reasonable minds could differ as to "whether the information constituted an emergency."

As to that assertion, we are in full agreement with the Court of Appeals which stated:

"* * * An officer must be able to respond to the calls of others that help is needed immediately without the need to initiate a cross-examination calculated to elicit the operative facts upon which the judgment of urgency is based.

"It is the policy of the law to free him from apprehension of liability in case of 'false alarm' or cry of 'wolf.'

"This defendant was told that there was a large fight or brawl and that fellow officers needed immediate help,

\* \* \* It was not his to reason 'why?' ''

In conclusion, we also are in agreement with the following language of the Court of Appeals:

''If it is unwise or unfair to load the economic burden of the damage done by this policy upon the innocent users of the highway, the governmental power to change the policy remains in the hands of the Legislature where the immunity was created.''

We should add that the present legislative policy grants immunity, not only to policemen engaged in the operation of a motor vehicle while responding to an emergency call but an even broader immunity to the municipal corporation itself ''as to the negligence of: (A) Members of the police department engaged in police duties.'' (R. C. 701.02.)

Assuming the premise, advanced by the appellant, that this policy leaves the innocent victim financially unprotected, we cannot thereby infer an ambiguity which does not exist, and, in the guise of interpretation, amend the existing statutory law.

For the reasons stated herein the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, DUNCAN and CORRIGAN, JJ., concur.[2]

LEACH, J., of the Tenth Appellate District, sitting for MATTHIAS, J.

---

[2]CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.