666 F.2d 1013
 9 Fed. R. Evid. Serv. 952
 Joseph Edward MARTIN, individually, and as administrator of
the Estate of James Edward Martin, deceased,
Plaintiff-Appellant,
v.
Timothy S. WEAVER and the City of Gallipolis, Ohio,
Defendants-Appellees.
 No. 80-3246.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 7, 1981.
Decided Dec. 3, 1981.
 
 Don C. Kingery, Point Pleasant, W.Va., Steven E. Hillman, Columbus, Ohio, for plaintiff-appellant.
 S. Noel Melvin, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for defendants-appellees.
 Before WEICK, ENGEL and JONES, Circuit Judges.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 James Edward Martin, an incompetent, suing by his representative, Joseph E. Martin, and Joseph E. Martin, individually, filed this diversity action against Timothy S. Weaver, a police officer for the City of Gallipolis, Ohio, and against the City of Gallipolis for personal injuries and property damage sustained as a result of Officer Weaver's negligent operation of a police cruiser. The defendants, Officer Weaver and the City of Gallipolis, asserted as affirmative defenses: (1) that they were immune from liability because Officer Weaver was "responding to an emergency call" within the meaning of Ohio Rev. Code § 701.02; and (2) that James Martin was guilty of contributory negligence. Both issues were presented to the jury which returned a general verdict for the defendants. On appeal, the plaintiffs contend that the district court erred in refusing to permit the plaintiffs' rebuttal witnesses to testify concerning the alleged contributory negligence. The plaintiffs further contend that the district court improperly instructed the jury on Ohio immunity law applicable to motor vehicle collisions involving municipal police officers. Because we find that reversible error occurred which affected both issues submitted to the jury, we reverse and remand.
 
 I.
 
 2
 The City of Gallipolis, a municipal corporation organized under the laws of Ohio, engages in certain governmental functions for the benefit of its several thousand residents. Timothy S. Weaver is a police officer in the employ of the City. At the time of the accident herein, Officer Weaver was serving a one-year probationary period during which time he had received no formal training from the police department.
 
 
 3
 On June 4, 1977, at approximately 1:00 a. m., Officer Weaver was patrolling the City's business district in his police cruiser. He was accompanied by a young police cadet. From his own account of the events that night, Officer Weaver was proceeding eastbound along State Street. As he approached the intersection of Second Avenue and State Street, he heard the revving of a car's engine. He noticed a gold Corvette automobile facing him. The Corvette was stopped at the traffic light. Officer Weaver was aware that the Corvette was owned by Eric Saunders. However, Officer Weaver denied recognizing or acknowledging the driver of the Corvette. When the traffic light changed, and before Officer Weaver arrived at the intersection, the Corvette turned left onto Second Avenue, squealed its tires, laid a patch of rubber and swerved back and forth. At that moment, Officer Weaver turned right onto Second Avenue and engaged the red lights and siren on the roof of his police cruiser. By the time Officer Weaver switched on his siren, the Corvette had failed to obey the red traffic light at the intersection of Secion Avenue and Court Street. Both vehicles were traveling at a speed which was estimated to be twice the legal speed limit.
 
 
 4
 Again by his own account, Officer Weaver decelerated when he reached the intersection of Second Avenue and Court Street. Once through the intersection, Officer Weaver accelerated in his pursuit of the gold Corvette. The Corvette had already run the red light at the intersection of Second Avenue and Grape Street.
 
 
 5
 As he approached the intersection of Second Avenue and Grape Street, Officer Weaver was seven or eight car lengths behind the Corvette. Nearing the intersection, Officer Weaver noticed that though the traffic light governing traffic on Second Avenue (upon which he was traveling) was still red, the traffic light controlling traffic on the east-west section of Grape Street was yellow and was about to change. At the intersection, Officer Weaver glanced down Grape Street. He saw a truck parked diagonally. He could not see a vehicle behind the truck. Suddenly, as Officer Weaver was accelerating through the intersection, the police cruiser collided with an automobile owned by Joseph E. Martin. Officer Weaver and the police cadet in the police cruiser were dazed. After he managed to extricate himself from the police cruiser, Officer Weaver rushed over to attend to James Martin. Martin sustained serious personal injuries in the accident which ultimately resulted in his death.
 
 
 6
 On December 8, 1977, James Martin, suing by his representative, Joseph Martin, filed an action in diversity against Officer Weaver and the City of Gallipolis for damages for personal injuries from Officer Weaver's negligent operation of the police cruiser. Joseph Martin sued personally to recover damages to his automobile. The defendants answered the Martins' complaint by denying the alleged negligence and by asserting two affirmative defenses. First, the defendants charged that even if Officer Weaver was negligent, the defendants were immune from liability because Officer Weaver was "responding to an emergency call" within the meaning of Ohio Rev.Code § 701.02. Second, the defendants contended that even if Officer Weaver was not responding to an emergency call, James Martin was contributorily negligent because he failed to comply with his duties under Ohio Rev. Code § 4511.45 and, as a consequence, was negligent per se.
 
 
 7
 The trial began on November 26, 1979. During their case-in-chief, the plaintiffs cross-examined Officer Weaver as an adverse witness. Officer Weaver was also examined and cross-examined during the presentation of the defendants' proof. At the conclusion of Officer Weaver's testimony, the plaintiffs attempted to call Eric Saunders to the stand to rebut Officer Weaver's version of the facts. The district court refused, ruling that the plaintiffs could have and should have called Eric Saunders to the stand during their case-in-chief, and that Officer Weaver's testimony in the defendants' case did not vary materially from his cross-examination in the plaintiffs' case. However, the district court agreed to read the proffered testimony of Eric Saunders into the record. Additionally, the plaintiffs objected to the introduction without prior notice of the testimony of three witnesses since that introduction contravened the district court's pretrial order restricting the presentation of evidence.
 
 
 8
 At the close of the evidence, the district court granted the plaintiffs' motion for a directed verdict on the issue of Officer Weaver's negligence. Thereafter, the district court submitted to the jury the issues of proximate cause, damages, governmental immunity and contributory negligence. The jury returned a general verdict in favor of the defendants. Whereupon, the plaintiffs moved for judgment notwithstanding the jury verdict or for a new trial. The district court denied both motions.
 
 II.
 A. General Principles
 
 9
 At common law, the State of Ohio and its political subdivisions were not amenable to tort suits in state court without the consent of the state legislature. Krause v. State, 31 Ohio St.2d 132, 285 N.E.2d 736 (1972); Raudabaugh v. State, 96 Ohio St. 513, 118 N.E. 102 (1917). This doctrine of governmental immunity was partially abrogated by the adoption of Article I, Section 16 of the Ohio Constitution. Section 16 provides, inter alia, that "(s)uits may be brought against the state, in such courts and in such manner, as may be provided by law." This section is "not self-executing, and statutory consent is a prerequisite to such suit." Krause v. State, 285 N.E.2d at 737.
 
 
 10
 With the enactment of Ohio Rev. Code § 701.02, the Ohio state legislature authorized the maintenance of actions in tort against municipal corporations and police officers for personal injury and property damage caused by the officers' negligent operation of motor vehicles. Section 701.02 provides, in pertinent part:Any municipal corporation shall be liable in damages for injury or loss to persons or property and for death by wrongful act caused by the negligence of its officers, agents, or servants while engaged in the operation of any vehicles upon the public highways of this state, under the same rules and subject to the same limitations as apply to private corporations for profit, but only when such officer, agent, or servant is engaged upon the business of the municipal corporation.
 
 
 11
 The defense that the officer, agent or servant of the municipal corporation was engaged in performing a governmental function, shall be a full defense as to the negligence of:
 
 
 12
 (A) Members of the police department engaged in the operation of a motor vehicle while responding to an emergency call;
 
 
 13
 Policemen shall not be personally liable for damages for injury or loss to persons or property and for death caused while engaged in the operation of a motor vehicle while responding to an emergency call.
 
 
 14
 The plain language of this statute and the construction thereof indicate that a police officer, who negligently operates a police vehicle on official police business while responding to an "emergency call," is immune from personal liability for damages for injury or loss to persons or property resulting from the officer's negligence. Agnew v. Porter, 23 Ohio St.2d 18, 260 N.E.2d 830 (1970). Furthermore, the phrase "emergency call" refers to a "call to duty" which includes communications from citizens or police dispatchers and personal observations by the police officer of inherently dangerous situations which demand an immediate response on the part of that officer. Lingo v. Hoekstra, 176 Ohio St. 417, 200 N.E.2d 325 (1964).
 
 B. The Governmental Immunity Instruction
 
 15
 The plaintiffs assign error to the district court's jury instruction on governmental immunity. In that instruction, the district court charged the jury on Ohio immunity law pursuant to Ohio Rev. Code § 701.02. The district court stated that:
 
 
 16
 An emergency call need not come from a citizen, a superior officer, or the police dispatcher. An emergency call may be a call to duty that arises out of the officer's personal observation. An emergency call arises when circumstances observed by the policeman would lead a reasonable person in the shoes of that policeman, knowing what he knew, equipped, trained, educated, and experienced as he was, to conclude that the situation was of such danger that it warranted a hazardous or dangerous response.
 
 
 17
 The plaintiffs contend that this jury instruction was erroneous as a matter of law. While the jury instruction was appropriate in Agnew, we believe that the facts and circumstances of this case necessitate an instruction which more closely parallels the teaching of Lingo. In Lingo v. Hoekstra, supra, the Ohio supreme court held that a police officer, who was pacing a suspected speed law violator to determine whether he was driving at a speed in excess of the legal limit was not, as a matter of law, "responding to an emergency call." In defining what constituted "an emergency call" under the circumstances of that case, the Lingo court formulated the following test:
 
 
 18
 the essential question here is: Was this "an emergency call," that is, did it arise from such a dangerous situation that it would excuse the defendant from being liable for his negligent conduct which resulted in the injury to the plaintiff?
 
 
 19
 There is no evidence here that the defendant had any reason to believe that the driver of the car which he was pursuing had committed any crime, felony or misdemeanor other than the possibility, which was never determined, that he might have been guilty of the misdemeanor of violating a 35-mile-per-hour speed law and of committing an additional misdemeanor of running through a red traffic light, which the defendant asserts occurred during the time he was pacing this vehicle and before he had determined that its driver was exceeding the speed law (all other witnesses to the accident called at the trial testified that they did not see any vehicle run the red traffic light ahead of the patrolman's car, which vehicle he claimed he was pursuing for the purpose of pacing it to determine its speed).
 
 
 20
 200 N.E.2d at 328. To reiterate, the critical element of the Lingo test appears to be the existence of a situation sufficiently dangerous to excuse a police officer's negligent operation of a police vehicle. Moreover, a suspected traffic violation, including a speeding violation, does not necessarily give rise to the type of dangerous situation contemplated by Lingo.[1]
 
 
 21
 In Agnew v. Porter, the Ohio supreme court held that when a police officer negligently operates a police vehicle while responding to a radio dispatch, which ordered that officer to proceed to a local high school to assist fellow police officers who requested immediate assistance, the officer was "responding to an emergency call" within the meaning of Ohio Rev.Code § 701.02 as a matter of law. In so holding, the Agnew court refused to compel the officer in receipt of such a radio message to independently verify whether or not an actual emergency existed or to question the judgment of the dispatcher who issued the radio message. The court recognized that under these circumstances section 701.02 constituted a full defense to an action in tort for damages arising from the negligent operation of the police vehicle. This defense attached even though the police officer failed to observe the statutory duty to sound the siren and to flash the emergency lights.
 
 
 22
 Clearly, Agnew reaffirmed the general rule that municipal corporations, and the police officers in their employ, will not be financially responsible for personal injury and property damage caused by the officers' negligent response to a call to duty. Agnew also established that the Lingo decision was an exception to that general rule. As previously discussed, the Lingo exception is based upon the premise that a mere traffic violation does not constitute the kind of inherently dangerous situation or "emergency call" which will immunize police officers from personal liability for damages from their negligent conduct.
 
 
 23
 It is abundantly clear that this case properly falls within the ambit of the Lingo exception. In this case, Officer Weaver's testimony revealed that Officer Weaver knew Eric Saunders, the speed law violator, for approximately ten years. Weaver and Saunders attended high school together. They played on the same high school football team. Weaver recognized Saunders's gold Corvette. He was aware that there were only two gold Corvettes in the City and he assumed that Saunders was driving the gold Corvette in question. Officer Weaver's testimony also raised important questions of whether he conducted himself as a reasonably prudent person under the circumstances would have: whether he applied the brakes when he should have and whether he observed reasonable care in speeding through the intersections. Finally, Officer Weaver's testimony raised factual issues: (1) whether Weaver and Saunders acknowledged each other at the intersection of Second Avenue and State Street before the speeding episode commenced; (2) whether Weaver had ever been a passenger in Saunders's car; and (3) whether Weaver's pursuit of speed law violators contravened police regulations. On these facts, the district court directed the verdict against Weaver on the issue of negligence.
 
 
 24
 This case does not present a situation in which a police officer was in hot pursuit of a dangerous criminal or suspected felon on city streets. Nor are we confronted with a high-speed chase on a crowded thoroughfare during a busy time of day. Rather, in this case, the police officer and the suspected speed violator knew each other and the chase was conducted in the empty streets of a small municipality at about 1:00 a. m. Therefore, we do not believe that this is the type of dangerous situation in which the Ohio state legislature or the Ohio supreme court intended to immunize a police officer's negligent operation of a police vehicle.
 
 
 25
 Accordingly, we believe that the district court's jury instruction inadequately apprised the jury of Ohio immunity law. Viewed in its totality, the instruction failed to inform the jury of the particular circumstances under which negligent police officers are immune from personal liability.
 
 
 26
 The plaintiffs further contend that the district court erred in failing to instruct the jury that the defendants had the burden of proving by a preponderance of the evidence that Officer Weaver was "responding to an emergency call."[2] We agree.
 
 
 27
 The burden of proving an affirmative defense by a preponderance of the credible evidence is on the party asserting the defense. Batesole v. Stratford, 505 F.2d 804, 810 (6th Cir. 1974); Tresise v. Ashdown, 118 Ohio St. 307, 160 N.E. 898 (1928).
 
 
 28
 In the instant case, the district court's failure to instruct the jury as to which party bore the burden of proving that Officer Weaver was "responding to an emergency call" impermissibly allowed the jury to speculate on this crucial question.
 
 
 29
 In sum, we hold that the district court erred by incompletely instructing the jury on Ohio governmental immunity law and by failing to charge the jury that the defendants had the burden of proving the immunity defense.
 
 
 30
 C. Rebuttal Testimony on the Contributory Negligence Defense
 
 
 31
 The plaintiffs also allege that the district court erred in refusing to permit Eric Saunders, the plaintiffs' rebuttal witness, to testify concerning James Martin's alleged contributory negligence. We agree.
 
 
 32
 Under Rule 403 of the Federal Rules of Evidence, the district court may exclude relevant evidence which is otherwise cumulative, a waste of time, misleading or confusing to the jury or which causes undue delay or unfair prejudice.[3] The district court's control over the presentation of evidence and the interrogation of witnesses is further enhanced by the grant of certain discretionary powers under Fed.R.Evid. 611(a).[4] As the "governor of the trial for the purpose of assuring its proper conduct," the district court exercises broad powers to "determine generally the order in which parties will adduce proof." Geders v. United States, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976). Absent an abuse of discretion, a reviewing court may not disturb the judgment of the district court respecting the introduction, presentation or exclusion of evidence or the interrogation of witnesses. Id.
 
 
 33
 In the exercise of sound discretion, the district court may limit the scope of rebuttal testimony, Geders v. United States, supra; United States v. Algie, 503 F.Supp. 783, 793 (E.D.Ky.1980), to that which is directed to rebut new evidence or new theories proffered in the defendant's case-in-chief. See, e.g., Bowman v. General Motors Corp., 427 F.Supp. 234, 240 (E.D.Pa.1977). However, "(w) here ... (the) evidence is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal." National Surety Corp. v. Heinbokel, 154 F.2d 266, 268 (3d Cir. 1946). Furthermore, with respect to "real rebuttal evidence," the plaintiff has no duty to anticipate or to negate a defense theory in plaintiff's case-in-chief. Weiss v. Chrysler Motors Corp., 515 F.2d 449, 458-59 (2d Cir. 1975).
 
 
 34
 Applying these principles, we hold that it was an abuse of judicial discretion to exclude the testimony of the Martins' rebuttal witness. We are compelled to reach this conclusion for several reasons. First, on the Martins' case-in-chief, the Martins cross-examined Officer Weaver, as an adverse witness, in order to meet the Martins' initial burden of going forward with evidence of Officer Weaver's alleged negligence and to establish that Officer Weaver's negligence proximately caused the Martins' injuries. As discussed above, the Martins did not bear the burden of negating either of the defendants' affirmative defenses. The Martins had no duty to anticipate the defense theories.
 
 
 35
 Second, on the defendants' case-in-chief, the Martins once again cross-examined Officer Weaver. During this cross-examination, Officer Weaver's testimony paralleled his former testimony to the effect (1) that Officer Weaver did not stop at or recognize Eric Saunders at the intersection of Second Avenue and State Street; (2) that Officer Weaver heard the revving of the gold Corvette's engine; (3) that Officer Weaver did not signal Eric Saunders to turn left onto Second Avenue; (4) that the gold Corvette squealed its tires when it careened onto Second Avenue; (5) that Eric Saunders failed to obey several red traffic lights; (6) that there was only one truck parked on the truck lot at the intersection of Second Avenue and Grape Street; and (7) that Officer Weaver had never been a passenger in Eric Saunders's gold Corvette. At the close of the defendants' proof, the Martins attempted to call Eric Saunders to the stand to rebut Officer Weaver's testimony. The district court refused because the Martins had the opportunity to call Eric Saunders during the Martins' case-in-chief.[5] The district court further ruled that Officer Weaver's testimony in the Martins' and the defendants' case was consistent. Nevertheless, the court read the proffered testimony of Eric Saunders into the record.[6] That testimony refuted each of the aforementioned factual assertions by Officer Weaver. In doing so, the proffered testimony directly related to the Martins' denial of contributory negligence[7] and to whether Officer Weaver was "responding to an emergency call."
 
 
 36
 Third, without Eric Saunders's testimony, Officer Weaver's assertions remained unrebutted. Eric Saunders was the only other person who had personal knowledge of how the speeding episode was initiated and whether in fact Officer Weaver was chasing him as a speed law violator or as an acquaintance with whom Weaver was drag racing. Consequently, we believe that the district court should have permitted Saunders to testify. Under the circumstances of this case, the exclusion of the proffered testimony unfairly prejudiced the Martins.
 
 D. The Ohio "Two-Issue" Rule
 
 37
 The defendants contend that even if the district court erred in instructing the jury on Ohio immunity law, the error was harmless because the issue of contributory negligence was properly before the jury. The defendants assert, therefore, that under the Ohio "two-issue" rule an irrebuttable presumption arises that the jury decided both issues in the defendants' favor. We disagree.
 
 
 38
 In Keet v. Service Machine Co., Inc., 472 F.2d 138 (6th Cir. 1972), this Court succinctly articulated the import of the Ohio "two-issue" rule by stating:
 
 
 39
 In Ohio, where a jury returns a general verdict in a case involving more than one issue and where the verdict is not tested by interrogatories to determine on which issue the jury based its decision and one of the issues was submitted free from error, it is presumed that all issues were decided in favor of the prevailing party, and the error in presenting the other issues will be disregarded.
 
 
 40
 Id. at 140. However, if both issues submitted to the jury were erroneous, then a general jury verdict cannot stand.
 
 
 41
 In this case, we have held that the district court not only erred in its instruction on Ohio immunity law, but also in its exclusion of Saunders's rebuttal testimony from the trial. Therefore, the Ohio "two-issue" rule is inapposite.
 
 III.
 
 42
 In summary, we believe that the holding and the underlying facts and circumstances of Lingo control this case. As previously stated, a mere traffic or speed law violation does not constitute the kind of inherently dangerous situation which would immunize a police officer from personal liability for the negligent operation of a police vehicle. Therefore, the district court's jury instruction did not fully apprise the jury of Ohio immunity law. Furthermore, the district court's exclusion of the proffered rebuttal testimony was an abuse of judicial discretion.
 
 
 43
 Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent herewith.
 
 WEICK, Circuit Judge, dissenting:
 
 44
 This is a diversity case governed entirely by the law of the State of Ohio. The plaintiffs sued a city policeman and the City of Gallipolis, a municipal corporation, for substantial damages for personal injuries, property damages and wrongful death, arising out of a collision with a police car, which with siren and lights engaged was pursuing another automobile which was speeding at a high rate of speed in the downtown business section of the City in the early morning and going through red lights at street intersections, in violation of the statutes of Ohio and municipal ordinances, and the police car collided with plaintiff's automobile when it came out from behind another vehicle.
 
 
 45
 The police officer and the City defended on the ground of the exemption from liability provided by Ohio Revised Code § 701.02, which provides "(P)olicemen shall not be personally liable for damages for injury or loss to persons or property and for death caused while engaged in the operation of a motor vehicle while responding to an emergency call." The defense also alleged contributory negligence of the plaintiffs in not abiding by the applicable Ohio statute.
 
 
 46
 The trial judge submitted the factual issues to the jury which returned a verdict in favor of the defendants.
 
 
 47
 On appeal, the majority has reversed principally for an alleged erroneous instruction given by the trial court to the jury on the subject of what constituted an emergency call to duty. The alleged erroneous instruction was taken by District Judge Kinneary word for word from Agnew v. Porter, 18 Ohio App.2d 128, 133, 247 N.E.2d 487 (1969), aff'd, 23 Ohio St.2d 18, 260 N.E.2d 830 (1970). This was clearly "such a dangerous situation that it would excuse the defendant from being liable for his negligent conduct." Lingo v. Hoekstra, 176 Ohio St. 417, 421, 200 N.E.2d 325 (1964).
 
 
 48
 The decision of a state court of appeals alone on an issue of state law is binding on a federal court in a diversity case and it should be followed particularly where the appellate decision as here was affirmed by the Supreme Court of the State.
 
 
 49
 Evidentiary issues decided by the district court were not reversible as they did not involve abuse of discretion on the part of the trial judge.
 
 
 50
 Federalism requires federal courts to follow state law which was not done here.
 
 
 51
 I would affirm the judgment of the district court.
 
 
 
 [1]
 An "emergency call" could occur when a police officer receives a police dispatch to proceed to and quell a brawl at a high school, Agnew v. Porter, supra; or when a city ambulance driver ignores traffic laws while rushing injured persons to a city hospital, McDermott v. Irwin, 148 Ohio St. 67, 73 N.E.2d 86 (1947); or when a fireman negligently operates a fire truck while proceeding to a fire in progress. Nanna v. Village of McArthur, 44 Ohio App.2d 22, 335 N.E.2d 712 (Ct.App. Vinton County 1974)
 It seems clear that by its enactment of Ohio Rev.Code § 701.02, the state legislature intended that municipal employees who must attend to dangerous circumstances on a daily basis must be free from the constant spectre of personal liability. In weighing the harm to the victim of the municipal employee's negligent conduct against the harm to the public interest due to restrictions placed upon the employee's performance of his sworn duty, it appears that the state legislature struck the balance in favor of the employee's immunity from personal liability. However, section 701.02's preservation and grant of municipal and personal immunity is not absolute. The qualifying language of "responding to an emergency call" has been construed by Ohio courts to distinguish inherently dangerous situations like responding to a radio dispatch to quell a brawl or driving a city ambulance to a city hospital or operating a fire truck on the way to a fire from less dangerous circumstances like chasing a suspected traffic violator. In the first three cases, municipal employees were duty bound to respond to highly dangerous situations in which a reasonably prudent person under the same obligations probably would have acted in the same manner. Certainly, a fire or a brawl are much more dangerous occurrences than a traffic violation. A traffic violator is no more dangerous than the police officer who is also violating traffic rules during the ensuing chase. The calculus of danger is a matter of degree, of line-drawing which was the proper province of the state legislature and the state supreme court. A present danger justifies the risk of negligent pursuit. A mere speculative danger in the form of a speeder does not exonerate similar negligence by a police officer.
 We find the district court's jury instruction in error because it shifts the focus of Ohio immunity law, as construed by the Ohio supreme court, from immunizing a police officer involved in a dangerous situation to immunizing a police officer who acted dangerously.
 
 
 [2]
 Initially, the district court instructed the jury that the plaintiffs bore the burden of establishing by a preponderance of the evidence that Officer Weaver was negligent and that Officer Weaver's negligence proximately caused the plaintiffs' injuries. Thereafter, the district court informed the jury of the defendants' affirmative defenses that Officer Weaver was "responding to an emergency call" and that James Martin was contributorily negligent. The court defined "emergency call," apprised the jury of tort law on negligence and charged that the defendants had the burden of proving their defense of contributory negligence. Nowhere in the jury instruction did the district court state that the defendants carried the burden of persuading the jury that Officer Weaver was "responding to an emergency call."
 
 
 [3]
 Fed.R.Evid. 403 provides:
 Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 [4]
 Fed.R.Evid. 611(a) states:
 Rule 611(a). Control by Court.
 The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
 
 
 [5]
 On appeal, the Martins allege that they were unable to locate Eric Saunders until three days before the trial. The Martins further assert that the district court's final pretrial order requiring both parties to notify the court of a proposed witness's name, address and intended testimony at least ten days prior to trial effectively precluded the Martins from calling Saunders
 
 
 [6]
 The trial transcript reads as follows:
 Thereupon, out of the hearing of the jury, the following proceedings were had:
 THE COURT: The record will show that at the conclusion of the presentation of the evidence in chief for the two defendants, the court called counsel to the bench to consider the matter of the rebuttal testimony that the plaintiff proposes to offer.
 The record will show that the plaintiffs' counsel handed the court, in a pleading form, a paper entitled "plaintiffs' Rebuttal Witnesses," which was handed to the court at the conclusion of the plaintiffs' testimony and before any testimony by the defendants.
 The first proposed as a rebuttal witness in the list which the Court hereby makes a part of this record is the name of Eric Saunders, Mineral Wells, West Virginia, who will be offered to repudiate and impeach the testimony of the defendant, Timothy S. Weaver, on the following grounds:
 (a) that he and the defendant, Timothy S. Weaver, were both stopped for the stop light at the intersection of State Street and Second Avenue in the City of Gallipolis;
 (b) that he did not rev his engine prior to making a left-hand turn;
 (c) that he was motioned by the defendant, Timothy S. Weaver, by hand signal to turn left in front of him after the light had turned to green;
 (d) that he did not squeal his tires at any time during his left-hand turn onto Second Avenue and did not violate any traffic laws of the State of Ohio until such time as the defendant, Timothy S. Weaver, turned on his red lights prior to the intersection of Second Avenue and Court Street;
 (e) that the light when he passed under the intersection of Court Street and Second Avenue was green for him;
 (f) that the light at the intersection of Grape Street and Second Avenue when he passed under the light was also green;
 (g) that there were several vehicles parked on the truck lot at the intersection of Second Avenue and Grape Street on the evening that this accident occurred;
 (h) he will further testify that he recognized the defendant, Timothy S. Weaver, who is a friend of his, while they were waiting for the light to change at the intersection of Second Avenue and State Street, and that since the defendant, Timothy S. Weaver, waved him to turn left in front of his police cruiser, he was assured that the defendant, Timothy S. Weaver, recognized him.
 (i) He may also testify that the said Timothy S. Weaver has been a passenger in his car, which was a gold Corvette, prior to the time of this accident.
 The court notes that the plaintiff, as its first witness, called the defendant, Timothy S. Weaver, under the rule and was entitled to examine this witness with leading questions as an adverse party.
 The court finds that based upon the information given to it by counsel for the plaintiff, that the plaintiff had the opportunity to call Eric Saunders as a witness in its own case, and failed to do so, therefore the court will not permit the plaintiff to call Eric Saunders as a rebuttal witness.
 Furthermore, with respect to the testimony of Eric Saunders, the court observes that the defendants called Officer Weaver in its own case, and it is the court's finding that the testimony of Officer Weaver, both on direct and cross-examination in the defendant's case, did not materially differ from cross-examination of Officer Weaver in the plaintiffs' case.
 
 
 [7]
 During the presentation of the plaintiffs' proof and the defendants' proof, Officer Weaver testified that one truck was parked diagonally on the truck lot at the intersection of Second Avenue and Grape Street. The proffered testimony of Eric Saunders indicated that several vehicles were parked on the truck lot at that intersection. The number of vehicles and the extent to which those vehicles obstructed James Martin's view bear directly on the Martins' defense to contributory negligence