968 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas L. O'NEIL, Defendant-Appellant.
 No. 91-1679.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1992.
 
 Before RYAN, BOGGS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Thomas O'Neil appeals from his conviction for unlawful distribution of explosives, possession of an unregistered short-barreled shotgun, and possession of marijuana. He presents several claims of error; we reject these, and affirm both his conviction and his sentence.
 
 
 2
 * On May 3, 1990, Drug Enforcement Administration agents executed a search warrant at the residence of Michael Finch, in Harbor Beach, Michigan, and found a large number of explosives and fireworks. Four days later, Mr. O'Neil telephoned DEA Agent Thomas Kostecke; shortly afterward, Agent Kostecke returned this call and taped the ensuing conversation. Mr. O'Neil complained that some of the explosives taken from Mr. Finch's house belonged to him, and said that he wanted them back. On May 23, Agent Kostecke discussed this conversation with Michael Lawandus, an agent for the Federal Bureau of Alcohol, Tobacco, and Firearms who had assisted the DEA in its search of Mr. Finch's residence. After further research, Agent Lawandus learned that Mr. O'Neil possessed valid federal and state licenses to manufacture and deal in explosives. However, he found that Mr. Finch possessed neither state nor federal explosives licenses. Agent Lawandus later spoke to an officer with the Saniliac County Drug Task Force, who said that he had seen significant amounts of explosive materials in Mr. O'Neil's garage on March 3, 1990. Another law enforcement agent later told Agent Lawandus that he had seen explosives in Mr. O'Neil's garage on June 1, 1990.
 
 
 3
 On June 28, 1990, Agent Lawandus applied for a search warrant of Mr. O'Neil's residence in Port Hope, Michigan. He submitted an affidavit outlining the above facts and stating that probable cause existed to believe that Mr. O'Neil had violated 18 U.S.C. § 842(e) by distributing explosives to someone whose possession of them would violate Michigan law. A warrant was issued that authorized agents to search for explosive devices and business records related to such devices, among other things. A group of law enforcement officers executed the warrant on June 29, 1990; they discovered explosive devices, an unregistered shotgun with a foot-long barrel, and small amounts of marijuana.
 
 
 4
 On November 28, 1990, a grand jury in the Eastern District of Michigan indicted Mr. O'Neil on five counts: (I) distribution of explosive materials, in violation of 18 U.S.C. § 842(e); (II) possession of an unregistered short-barreled shotgun, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; (III) conspiring to make a machine gun, in violation of 18 U.S.C. § 371; (IV) making a machine gun, in violation of 26 U.S.C. §§ 5861(f) and 5871; and (V) possession of marijuana, in violation of 21 U.S.C. § 844(a). Mr. O'Neil's wife was also charged on count V. The district court denied pre-trial motions by Mr. O'Neil and his wife to suppress the results of the search of the O'Neil residence.
 
 
 5
 At trial, several disputes occurred involving rebuttal testimony presented by the government. The district court allowed the government to present testimony in rebuttal from Larry Bienicki, who had not previously testified. The district court initially expressed its concern about allowing rebuttal evidence that could have been presented during the government's case-in-chief; however, the district court ultimately decided to allow Mr. Bienicki's testimony, while also allowing surrebuttal relative to his credibility. Mr. Bienicki then testified, over defense objection, that Mr. O'Neil had told him "we're going to get you before, after, or during court, but we will be seeing you." The government also called Phyllis St. Clair, an agent with the Bureau of Alcohol, Tobacco, and Firearms, in order to rebut Mr. O'Neil's testimony that she had authorized him to store explosives overnight at places such as Mr. Finch's house. Ms. St. Clair contradicted this claim, and also testified, over defense objection, about a conversation she had with Mr. O'Neil that had not been discussed in Mr. O'Neil's testimony.
 
 
 6
 In his closing statement, the prosecutor tried to attack Mr. O'Neil's credibility by contrasting his testimony at trial with his taped conversation with Agent Kostecke on May 7, 1990: "What he said for the first time [at trial], he says that Mr. Finch is an employee of his. He doesn't say employee, but listen to that tape again. He doesn't say that Mr. Finch is an employee on the tape." Mr. O'Neil did not object to this statement at trial.
 
 
 7
 On March 4, 1991, Mr. O'Neil was convicted on counts I, II, and V, but was acquitted on counts III and IV. His wife was acquitted on count V. A pre-sentence report determined that Mr. O'Neil's total offense level was 20, with a criminal history category of I; these factors indicate an imprisonment range of 33 to 41 months. The proposed offense level included a two-level enhancement for obstruction for justice. Mr. O'Neil objected to this enhancement, and also moved for a two-level reduction for acceptance of responsibility. On June 5, 1991, Judge Cleland rejected Mr. O'Neil's motions and sentenced him to 36 months on count I, 33 months on count II, and 12 months on count V, with all terms to run concurrently. This timely appeal followed.
 
 II
 
 8
 Mr. O'Neil argues that the district court should have suppressed the result of the search warrant on the grounds that the warrant violated the fourth amendment's requirement that "no Warrants shall issue, but upon probable cause." He acknowledges that in recent years the Supreme Court has applied a relatively lenient standard of review to a magistrate's decision to issue a warrant.
 
 
 9
 The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis or knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.
 
 
 10
 Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983) (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736 (1960)).
 
 
 11
 However, Mr. O'Neil contends that the warrant in this case cannot meet even this standard. He argues that the warrant was based upon stale information, because even if he had told Agent Kostecke that some of the explosives taken from Mr. Finch's house belonged to him, that fact did not support a finding, seven weeks later, that police could find evidence demonstrating that he had distributed explosives to Mr. Finch. Furthermore, Mr. O'Neil maintains that the affidavit does not suggest that anything illegal will be found. Paragraph fourteen of the affidavit contends that agents will find "components of the type used in making the devices found at the Finch residence, equipment used for said purpose, residency documentations, and business records indicating the manufacture, acquisition and disposition of explosive devices." Mr. O'Neil argues that it is perfectly logical, and certainly not illegal, that a licensed explosives dealer would have such items.
 
 
 12
 Next, Mr. O'Neil argues that the magistrate authorized a search that exceeded the probable cause showing made to him. Because the affidavit described explosives in Mr. O'Neil's garage, he argues that only the garage should have been searched. Instead, a DEA agent testified to finding marijuana while searching through a dresser drawer in the house; Mr. O'Neil contends that one can hardly expect to find explosives and materials used in making explosives in such a place. He also argues that Agent Lawandus was obliged to disclose to the magistrate that Mr. O'Neil could legally distribute explosives to Mr. Finch if Mr. Finch was his employee or agent.
 
 
 13
 Finally, Mr. O'Neil denies that the search can be upheld under the "good faith exception" to the exclusionary rule established in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405 (1984). In Maryland v. Garrison, 480 U.S. 79, 88, 107 S.Ct. 1013, 1018 (1987), the Supreme Court held that "the validity of the search of [the defendant's] apartment pursuant to [an overbroad warrant] depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." 480 U.S. at 88, 107 S.Ct. at 1018. In this case, Mr. O'Neil contends that it was not objectively reasonable for a DEA agent to believe that searching a dresser drawer in a bedroom did not exceed the scope of a warrant based upon evidence that explosives were stored in a garage.
 
 
 14
 We reject these arguments. "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728, 104 S.Ct. 2085, 2085 (1984). Furthermore, " '[a] grudging or negative attitude by reviewing courts toward warrants,' is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case." 466 U.S. at 733, 104 S.Ct. at 2088 (quoting United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746 (1965)).
 
 
 15
 In this case, we believe that substantial evidence supports the magistrate's decision. The affidavit stated that explosives had been found in Mr. Finch's residence, that Mr. O'Neil had been involved in manufacturing of some of these, and that Mr. Finch was not licensed to possess such explosives. Furthermore, the affidavit cited second-hand information that Mr. O'Neil had explosives at his residence. Thus, the magistrate could reasonably conclude that a search of Mr. O'Neil's residence would yield evidence linking him to the explosives at Mr. Finch's house. The magistrate could further conclude that similar devices and components, as well as business records, would also be found at Mr. O'Neil's residence. While the warrant did not mention marijuana or short-barreled shotguns, these items could be seized pursuant to the "plain view" doctrine. United States v. Blakeney, 942 F.2d 1001, 1027-28 (6th Cir.1991), cert. denied, 112 S.Ct. 881 (1992).
 
 
 16
 We also reject Mr. O'Neil's suggestion that the search should have been limited to the garage. The agents had been authorized to search for business records, which were more likely to be found in the house, and may have been found in dresser drawers. This court recently approved a search warrant for records that described them in generic terms, saying, " '[w]here the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice.' " United States v. Henson, 848 F.2d 1374, 1383 (6th Cir.1988), cert. denied, 488 U.S. 1005, 109 S.Ct. 784 (1989) (quoting United States v. Porter, 831 F.2d 760, 764 (8th Cir.1987), cert. denied, 484 U.S. 1069, 108 S.Ct. 1037 (1988)). Thus, the search was not overbroad.
 
 
 17
 Furthermore, we do not believe that the warrant was based on stale evidence. Mr. O'Neil was in the explosives business, and large amounts of explosives had been seen at his residence on two occasions several months apart. Thus, the magistrate could reasonably conclude that explosive devices and records of the distribution to Mr. Finch would still be present several weeks after the transfer occurred. In United States v. Word, 806 F.2d 658, 662 (6th Cir.1986), cert. denied, 480 U.S. 922, 107 S.Ct. 1383 (1987), this court upheld a warrant issued in May 1985, although the most recent illegal transaction alleged in the warrant occurred in January 1985. We said that "we cannot conclude that the search warrant contained stale information when the events alleged in the affidavit were of a continuing nature and the documents sought were business records prepared and kept in the ordinary course of business." We adopt the same analysis in this case.
 
 III
 
 18
 Mr. O'Neil contends that he should not have been convicted of illegal distribution of explosives, because the government failed to demonstrate that Mr. Finch was not his agent or employee. In its instructions to the jury, the district court defined "distribution" as follows:
 
 
 19
 To distribute ... is to sell, issue, give, transfer, or otherwise dispose of. The term under the law does not include a mere change of possession from a person to his agent or employee in connection with the agency or in connection with the employment.
 
 
 20
 See also 27 C.F.R. § 55.11. At trial, Mr. O'Neil and Mr. Finch testified that Mr. Finch occasionally helped in preparing fireworks for shows staged by Mr. O'Neil. They also testified that Mr. O'Neil had left explosives in Mr. Finch's home the night before the police searched it because it was late, he was tired, he had been drinking, and he did not know it would be a problem if he got them the next day. Mr. O'Neil contends, therefore, that this uncontroverted testimony proved the existence of an agency relationship between himself and Mr. Finch.
 
 
 21
 We are not persuaded by this argument. While Mr. O'Neil moved for acquittal pursuant to Fed.R.Crim.P. 29(a) at the close of the government's case, he failed to renew this motion at the close of all proofs, even though he had presented evidence in his own defense. "Failure to renew a motion for judgment of acquittal at the close of all the evidence limits the reviewing court to examine for plain error or to determine whether a manifest miscarriage of justice has occurred." United States v. Rigsby, 943 F.2d 631, 644 (6th Cir.1991), cert. denied, 112 S.Ct. 1269 (1992). Having reviewed the record, which indicates that Mr. O'Neil gave explosives to someone not licensed to possess them, we are confident that no plain error occurred on this issue. Apparently, the jury simply did not believe the testimony of Mr. Finch and Mr. O'Neil, and we see no reason to overturn their decision.
 
 IV
 
 22
 Mr. O'Neil also attacks the district court's decision to allow certain testimony by Larry Bienicki and Phyllis St. Clair on rebuttal. As noted earlier, Mr. Bienicki described a meeting he had with Mr. O'Neil, just before the trial, at which Mr. O'Neil supposedly threatened him. Mr. O'Neil contends that he never mentioned this meeting during his testimony; thus, he believes that Mr. Bienicki's testimony regarding it should not have been admitted into evidence. Mr. O'Neil relies upon Carver v. United States, 160 U.S. 553, 555, 16 S.Ct. 388 (1896), which stated that "[r]ebutting evidence is evidence in denial of some affirmative case or fact which defendant has attempted to prove." Because he had not attempted to prove anything regarding the meeting in question, he reasons that the government should not have been allowed to introduce it for purposes of general impeachment.
 
 
 23
 Mr. O'Neil claims that the district court exacerbated this problem by giving similar treatment to Ms. St. Clair's testimony. As noted earlier, she was called in rebuttal to Mr. O'Neil's claim that she had authorized him to store explosives overnight in places such as Mr. Finch's house under certain circumstances. Because she had come from Cincinnati to Bay City, Michigan for the trial, the district court allowed her to testify immediately after Mr. O'Neil had testified in his own defense, rather than making her wait until the end of the defense case. All parties apparently agreed to this, and the district court explained it to the jury.
 
 
 24
 After Ms. St. Clair testified that licensed manufacturers may not leave explosives unattended at someone else's residence overnight, the prosecutor attempted to ask her about a conversation that took place between her and Mr. O'Neil in December 1990. Mr. O'Neil's counsel objected, arguing that this conversation had not been brought out in the defense case. The district court decided to allow this testimony because Mr. O'Neil had made "statements in which he painted a picture of essentially being allowed free reign [sic] based on conversations that he had with the A.T.F. agents. This one in particular." Ms. St. Clair then testified that Mr. O'Neil had asked her to "draft a letter for him stating in the letter the various findings that I had during his compliance inspections and also stating that I had told him that he had 24 hours to store his manufactured explosives." Mr. O'Neil contends that this testimony, as well as that given by Mr. Bienicki, allowed the government to portray him as a malicious figure seeking to control the testimony at his trial, without having to do so in its case-in-chief. Furthermore, the district court later used the evidence concerning Ms. St. Clair in enhancing Mr. O'Neil's sentence for obstruction of justice.
 
 
 25
 This court has stated that "[a] trial judge's determinations regarding the order of proof and scope of rebuttal testimony will not be disturbed absent an abuse of discretion." Benedict v. United States, 822 F.2d 1426, 1428 (6th Cir.1987); see also Geders v. United States, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334 (1976). Furthermore, " '[w]here ... [the] evidence is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal.' " Martin v. Weaver, 666 F.2d 1013, 1020 (6th Cir.1981), cert. denied, 456 U.S. 962, 102 S.Ct. 2038 (1982) (quoting National Surety Corp. v. Heinbokel, 154 F.2d 266, 268 (3d Cir.1946)). We believe these specific holdings, rather than the general language of Carver, should control this case.
 
 
 26
 We hold that the district court did not abuse its discretion in its handling of rebuttal testimony. Ms. St. Clair testified to refute a specific claim made by Mr. O'Neil. Furthermore, in discussing the December 1990 conversation, she repeated her claim "that [she] did not tell him that he had 24 hours to store manufactured explosives." As for Mr. Bienicki's testimony, the record demonstrates that the district court allowed Mr. O'Neil to present surrebuttal testimony from three witnesses, all of whom attacked Mr. Bienicki's credibility. Moreover, Mr. O'Neil had testified that he believed he could safely leave explosives overnight at Mr. Finch's house, thus opening the door to rebuttal testimony demonstrating Mr. O'Neil's awareness of his guilt. "[S]poliation evidence, including evidence that defendant attempted to bribe and threatened a witness, is admissible to show consciousness of guilt." United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir.1986), cert. denied, 480 U.S. 922, 107 S.Ct. 1384 (1987). Finally, even if the district court abused its discretion by allowing Mr. Bienicki's testimony, such error was not prejudicial, as the court enabled the defendant to present surrebuttal testimony. See United States v. Goodwin, 770 F.2d 631, 638 (7th Cir.1985), cert. denied, 474 U.S. 1084, 106 S.Ct. 858 (1986) (no reversible error when "evidence presented in rebuttal could have been introduced in the government's case in chief, and [defendant] was allowed to present witnesses in surrebuttal to counter the government's rebuttal case").
 
 V
 
 27
 As noted earlier, the prosecutor used part of his closing statement to contrast Mr. O'Neil's claim at trial that Mr. Finch was his employee, with his May 7 conversation with Agent Kostecke. Mr. O'Neil contends that the prosecutor's comment that he had presented this defense "for the first time," constituted an attack on his silence. " '[I]t does not comport with due process to permit the prosecution during the trial to call attention to [a defendant's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.' " Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245 (1976) (quoting United States v. Hale, 422 U.S. 171, 182-83, 95 S.Ct. 2133, 2139 (1975) (White, J., concurring)). Mr. O'Neil also claims that the prosecutor's statement constituted testimony as to what the defendant had said on previous occasions.
 
 
 28
 We need not tarry long over this argument. Because Mr. O'Neil made no objection to the prosecutor's closing argument at trial, this court asks merely whether plain error occurred. See United States v. Young, 470 U.S. 1, 105 S.Ct. 1038 (1985). Having reviewed the record, we do not believe the statements in question constituted plain error. The principle established in Doyle has no place in this case, as Mr. O'Neil was neither silent nor under arrest during his May 7 conversation with Agent Kostecke. Instead, he initiated the contact with Agent Kostecke, apparently hoping to regain explosives that had been taken from Mr. Finch's residence. He was clearly not under arrest at that point, and was not actually arrested until over a month later.
 
 VI
 
 29
 At Mr. O'Neil's sentencing hearing, the district court determined that he "attempt[ed] to obstruct the proper administration of justice in a number of respects through the investigation and prosecution of this case both in his testimony and in his pretrial behavior with certain officers." See U.S.S.G. § 3C1.1. Thus, the court increased his sentence by two levels, and also concluded that it would be inappropriate to consider a two-level reduction for the defendant's acceptance of responsibility. U.S.S.G. § 3E1.1. The district court based its conclusions on its belief that, among other things, Mr. O'Neil had intentionally falsified records prior to his arrest and had lied about his conversations with Ms. St. Clair. It did not base its obstruction finding on the testimony of Mr. Bienicki. Mr. O'Neil argues that these findings are flawed, and also contends that "an upward adjustment for obstruction of justice ... requires more than a mere conflict in the trial testimony or a jury's rejection of a defendant's alibi or denial of guilt." United States v. Akitoye, 923 F.2d 221, 228-29 (1st Cir.1991).
 
 
 30
 We review the district court's decisions regarding both acceptance of responsibility and obstruction of justice only for clear error. See United States v. Osborne, 948 F.2d 210, 211-12 (6th Cir.1991); United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, 111 S.Ct. 2246 (1991). Furthermore, "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, comment. (n. 4); see also United States v. Phillip, 948 F.2d 241, 252 (6th Cir.1991), cert. denied, 112 S.Ct. 1994 (1992).
 
 
 31
 The record indicates that no clear error occurred in this case, as Mr. O'Neil's actions fell within the meaning of obstruction of justice as defined in the Guidelines. According to the district court, he attempted to influence a witness, an instance described in U.S.S.G. § 3C1.1, comment. (n. 3(a)). He attempted to produce false records during an official investigation. § 3C1.1, comment. (n. 3(c)). He also gave material false testimony. § 3C1.1, comment. (n. 3(b)). Thus, Mr. O'Neil did not receive this enhancement simply because his testimony disagreed with that of other witnesses, but because of actions taken both before and during the trial. Furthermore, we see no reason to reject the district court's finding that Mr. O'Neil had not accepted responsibility for his actions.
 
 VII
 
 32
 In conclusion, we find no error in the proceedings below. Accordingly, Mr. O'Neil's conviction and sentence are AFFIRMED.