Virginia BENEDICT, et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. C78–0529.

United States District Court,
N.D. Ohio, E.D.

Sept. 30, 1991.

Robert A. Marcis, Norman W. Shibley, Spangenberg, Shibley, Traci & Lancione, Cleveland, Ohio, for plaintiffs.

Patrick M. McLaughlin, Asst. U.S. Atty., Maureen Murphy, Arthur I. Harris, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION

BATCHELDER, District Judge.

This matter first came on for trial before the Court sitting without a jury on the complaint of the plaintiffs against the United States, seeking damages for injuries suffered as a result of plaintiff Virginia Benedict's inoculation for swine flu. As a result of the government's conceding that Virginia Benedict had in fact contracted Guillain–Barre Syndrome (hereinafter GBS), by the terms of the pretrial order entered in the multitude of swine flu cases throughout the country, plaintiffs were not required to prove any particular theory of liability, but bore the burden of proving by a preponderance of the evidence that the swine flu vaccine which Virginia Benedict had received was causally related to the GBS which she contracted some nine and one half weeks following her vaccination. At the conclusion of the trial, after careful consideration of all of the evidence presented, this Court found that plaintiffs had not succeeded in carrying their burden of proof, and entered judgment for the government. That judgment was reversed by the Court of Appeals for abuse of this Court's discretion in refusing to permit plaintiffs, who had presented no epidemiological evidence in their case in chief, to present such evidence by way of rebuttal. Accordingly the case was remanded for new trial, consistent with the findings of the Court of Appeals, 822 F.2d 1426.

Because the trial of this matter is a bench trial, and because the Court of Appeals had clearly indicated in its opinion that this Court had not erred in refusing to permit as rebuttal the findings of plaintiffs' expert, Dr. Martin Goldfield, as to his own epidemiological findings regarding the temporal relationship between inoculation for swine flu and subsequent contracting of GBS, but had erred only in refusing to permit Dr. Goldfield to testify as to his critical evaluation and refutation of the epidemiological data presented by the government in defense against plaintiffs' claim, this Court granted the government's motion to hear the retrial on the established record and to take testimony only from Dr. Goldfield. At the outset of the taking of the testimony of Dr. Goldfield, the government objected to any testimony from him regarding his own data and observations, and moved *in limine* to require that his testimony be confined to his criticism of the epidemiology as presented by the government's experts; however, the actual testi-

mony of Dr. Goldfield contains both his own observations on the data as it relates to his view of the period of increased risk following inoculation with swine flu vaccine, and his criticism of the accuracy of the data used and the conclusions reached by the government's experts. In addition, the government called Dr. Nathanson following Dr. Goldfield's testimony, without objection from plaintiffs except as to his testifying to a newly completed but not yet published study, which objection was overruled.

After careful consideration of the evidence presented in the initial trial, careful consideration of the testimony and accompanying exhibits of Dr. Goldfield, and a review of the testimony of Drs. Victor and Nathanson in light of the testimony of Dr. Goldfield, this Court finds that for the following reasons, the testimony of Dr. Goldfield does not alter the outcome of this case.

1. It was clearly established by the evidence presented by the government at the initial trial, and is not disputed by Dr. Goldfield, that there is no available method of establishing the cause of GBS except through epidemiological data.

2. Although in his questioning of Dr. Goldfield, plaintiffs' counsel used the figure of sixty-three days from Virginia Benedict's inoculation to the onset of her GBS, there is nothing in the testimony presented by Dr. Goldfield to support that figure, and the medical evidence clearly demonstrates that the onset of her GBS was at least sixty-nine days after her swine flu inoculation.

3. Although Dr. Goldfield has studied the data relative to swine flu vaccine and GBS, and has testified in a number of cases both as to his views of the temporal relationship between the two and the flaws in the study commissioned by the Justice Department, he has declined to reduce his evaluations to writing and to offer them for publication in a peer-reviewed medical journal. Thus, Dr. Goldfield's opinions have never been subjected to searching analysis through the process of peer review. To the contrary, however, each of

the studies initially relied on by the government, and relied on as well by the panel of experts who prepared the study commissioned by the Justice Department, has been extensively peer reviewed.

4. Goldfield's criticisms of the peer-reviewed studies relied on by the government is simply not persuasive. His own opinions relative to the accuracy of the data and the underlying assumptions which were engaged in by the panel are just that, and they do not satisfactorily refute the accuracy of the panel's work. He, for example, criticizes the panel for its assumption that a drop occurred in reporting of unvaccinated cases of GBS following the moratorium in inoculating, but he does not present any support for his own position that there was no such drop, or, as he also maintained, there was a corresponding (and perhaps greater) drop in reporting of immunized cases.

A careful review of Dr. Goldfield's testimony regarding his own analysis using the data utilized by Dr. Nathanson and the panel reveals that Dr. Goldfield simply does not state any factual basis for the assumptions which he makes in his analysis, which he maintains are the correct assumptions as opposed to those made and used by the panel. However, the panel's assumptions are all carefully explained, and explained to my satisfaction. For example, another major criticism which Dr. Goldfield makes of the panel's work is that in its analysis the panel moved some of the inoculations forward in time. Dr. Nathanson explained that there was some discrepancy in the numbers relative to the numbers of inoculations and the dates of those inoculations between those reported by the Center for Disease Control (CDC) and those reported by the National Health Survey (NHS). After study of the reports of each group, the panel concluded that the NHS was reporting much more accurately the actual dates of vaccination than was the CDC, which was simply reporting totals of vaccinations given during given time periods, but that the CDC was reporting more accurately the total numbers of vaccinations. Accordingly, the panel opted to

move a significant number of inoculations up into the first week of the program, based on the actual dates of vaccination as reported by the NHS. Dr. Goldfield is highly critical of this approach, but his only explanation for his own contention that the assumption of the panel was incorrect is his statement "But there were very few people immunized during the very first week of the program. And the numbers get too hard. It's too hard to handle." Transcript of Dr. Goldfield, p. 25, line 9.

5. Even accepting Dr. Goldfield's proposition that such reporting resulted in an artificially short period of enhanced risk, Dr. Nathanson's testimony was that this reporting would not have made more than, at most, a 10% change, which in this instance would have meant an increase in the period of enhanced risk of 5 or 6 days, bringing the maximum such period to 62 days (plaintiff's GBS had its onset 69 days after her vaccination). Dr. Goldfield's own evaluation of the data is not persuasive for the weeks 8 through 10, particularly in light of his lumping together all of the cases of GBS among immunized GBS victims during those weeks. Finally, the newest study of the data originally used by the panel, which involved an intensive re-analysis of the cases which originated in Michigan and Minnesota and which were part of that original data, not only confirmed the panel's initial view that the enhanced risk extended no more than eight weeks from date of inoculation, but persuasively demonstrates that such period actually extends only for about six weeks. That study had not yet been submitted for publication, and there is no indication that it had yet been subjected to any kind of peer review; nonetheless, it contains extensive data and explanations of that data which certainly tend to refute Dr. Goldfield's views.

6. Dr. Goldfield's testimony is equally unpersuasive in regard to the relationship between antecedent illness and GBS. It is Dr. Goldfield's view that there is virtually no reliable data or evidence to support a connection between certain types of acute illness and subsequent GBS. The evidence presented at the initial trial, however, was definitively to the contrary, and Dr. Gold-field again presented no facts or data in support of his position. The evidence at the initial trial demonstrated that there is widespread acceptance among the medical community that there are indeed antecedent illnesses which trigger GBS, that among those, one of the most common is acute respiratory illness occurring approximately two weeks prior to onset of GBS, and that Virginia Benedict had suffered from such an illness two to three weeks prior to the earliest date of onset of her GBS.

7. Although nothing presented in the rebuttal phase of this trial causes this Court to change its position as expressed in the first Opinion that the studies relied on by the government were in some respects flawed, neither has anything been presented which changes the fact that those flaws have been responsibly dealt with so as to provide as accurate an evaluation as possible of the relationship between swine flu inoculation and GBS, and indeed, the re-analysis of the Michigan and Minnesota data tends to support that position.

8. Finally, I am compelled, reluctantly, to observe that there was a marked difference in the presentation of testimony between the attitude and demeanor of Dr. Goldfield and that of the experts called by the government, particularly Drs. Victor and Nathanson. Drs. Victor and Nathanson were direct and objective in giving their testimony, and both were aware of the flaws in the data which they used in their work and were forthcoming in their willingness to acknowledge those flaws as well as to explain carefully the panel's reasoning in making assumptions to compensate for the problems with the data. Dr. Goldfield, on the other hand, was free with his contempt for the errors in those studies as he perceived them, as well as for the individuals who had made those errors, but was comfortably certain of the correctness of his own views. Dr. Goldfield left me far less certain of the correctness of his views than the correctness of those of the government's experts.

Accordingly, the Findings of Fact contained in the Opinion issued at the conclusion of the initial trial of this matter are incorporated herein in their entirety, with

the exception that the Court finds that the data and opinions offered by Dr. Goldfield as to the inaccuracy of the studies and conclusions offered by the government's experts as well as in regard to Dr. Goldfield's own evaluation of the period of enhanced risk of contracting GBS following inoculation for swine flu, are insufficiently supported by hard data, and are wholly unpersuasive. Further, the Court incorporates herein Conclusions of Law Numbers 1 through 5 of the Opinion issued at the conclusion of the initial trial of this case, and makes the following additional Conclusions of Law:

1. The record in this case clearly indicates that plaintiffs have failed to establish by a preponderance of the evidence that the swine flu inoculation directly and proximately caused plaintiff Virginia Benedict's GBS. Plaintiffs presented no medical evidence to support their theory of causation, but have relied on the temporal relationship between the two events, the conjecture of plaintiffs' expert, Dr. Foley, that because of this temporal relationship it would be "gratuitous" to assume a cause for the GBS other than the swine flu vaccine, and have relied further on the testimony of their expert, Dr. Goldfield, that the government's experts are erroneous in their conclusions as to the period of enhanced risk following inoculation for swine flu, having relied on faulty data and having manipulated and misinterpreted that data. The medical evidence, however, is entirely to the contrary of plaintiffs' position, and Dr. Goldfield's expert testimony is wholly insufficient to rebut or discredit the studies relied on by the government's experts.

2. Plaintiffs having failed to sustain their burden of proving that Virginia Benedict's GBS was caused by her inoculation for swine flu, judgment must be entered in favor of the United States.

Dated this 30th day of September, 1991.