RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0060P (6th Cir.)
File Name: 01a0060p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

RAYMOND G. VARGA;
KATHRYN M. VARGA,
　　　　*Plaintiffs-Appellants,*

　　　　*v.*

ROCKWELL INTERNATIONAL
CORPORATION,
　　　　*Defendant-Appellee.*

No. 99-1206

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-76295—Arthur J. Tarnow, District Judge.

Argued: June 16, 2000

Decided and Filed: March 5, 2001

Before: MARTIN Chief Judge; BATCHELDER and
MOORE, Circuit Judges.

—————————

**COUNSEL**

**ARGUED:** Eva I. Guerra, LAW OFFICES OF EVA I.
GUERRA, W. Bloomfield, Michigan, for Appellants. Ernest
R. Bazzana, PLUNKETT & COONEY, Detroit, Michigan, for
Appellee. **ON BRIEF:** Eva I. Guerra, LAW OFFICES OF

EVA I. GUERRA, W. Bloomfield, Michigan, for Appellants. Ernest R. Bazzana, PLUNKETT & COONEY, Detroit, Michigan, for Appellee.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.  Plaintiffs Ray and Kathryn Varga appeal the jury's verdict and the district court's entry of judgment in favor of Rockwell International ("Rockwell"), Ray Varga's employer, on the Vargas' federal and state law claims of age discrimination.  The Vargas raise numerous claims of evidentiary error at trial, and further assign as error the district court's failure to grant their motion for judgment as a matter of law or, in the alternative, for a new trial.  Finding that none of these assignments of error are meritorious, we affirm the judgment of the district court.

**I.**

In 1995, the Heavy Vehicle System of the Automotive Operations Division of Rockwell (HVS), was performing poorly.  The Rockwell Board of Directors insisted that HVS' performance be turned around or the division would be sold or shut down.  In early 1996, Management began a program to restructure HVS, described by Rockwell's CEO as taking a "blank paper" approach, with the goal of increasing efficiency and reducing expenses by 40 percent.  Managers worldwide were asked to start over and design the most efficient organization possible.  The skills of each current employee were then assessed to determine whether and where to place that employee within this new organization.

Ray Varga was employed in the Vehicle Test Group of HVS.  That Group consisted of four salaried engineers, of whom Varga was the most senior with 28 years of experience with Rockwell.  The other three engineers in the Vehicle Test Group had 22 years', 7 years', and 3 years' experience with Rockwell.  Mr. Federighe, an engineer in another work group,

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.

Plaintiffs are correct in their assertion that there was documented evidence that Varga's supervisors thought he did a good job. Under Rockwell's restructuring plan, however, adequate performance did not guarantee an employee's retention in the restructured organization. Rockwell's management received a directive from the Board of Directors to restructure, reorganize and improve efficiency by 40%. They were not looking to cut dead wood; they were looking to keep only optimal performers. The impact study showed that after the layoffs, the average age of Rockwell's workforce was reduced by 0.1 years. This is not statistically significant. Finally, plaintiffs' key evidence of discriminatory intent came from Larry Lemanski's testimony. But because Lemanski himself was terminated as part of the RIF, a jury easily could have discredited his testimony as being motivated by sour grapes. On this record, it cannot be said that the reasonable minds could not differ on the central question of whether or not Varga's age was the motivating reason for his layoff.

D. *Fed. R. Civ. P. 61.*

Plaintiffs argue that because the district court made so many erroneous evidentiary rulings, their trial was fundamentally unfair and the verdict should be reversed under Fed. R. Civ. P. 61. According to *Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp.*, 445 F.2d 911 (6th Cir. 1971), a plaintiff must prove that the evidence it was precluded from offering was more than cumulative or that the court abused its discretion before a reversal under Fed. R. Civ. P. 61 is appropriate. *See id.* at 918 ("In short, plaintiff has failed to show that if any of the District Court's evidentiary rulings were erroneous, plaintiff's right to a fair trial was prejudiced."). As we have already discussed, we find no abuse of discretion in any of the evidentiary rulings challenged by the plaintiffs. The plaintiffs did not present an overwhelming case, and there has been no miscarriage of justice.

sufficient to carry a motion for judgment as a matter of law.

had 7 years' experience with Rockwell. As part of the restructuring, Rockwell terminated Varga, retained the other three engineers in the Vehicle Test Group and moved Mr. Federighe into that group. Federighe worked in the Vehicle Test Group for 30-60 days before he was transferred to another department.

Varga and his wife sued Rockwell for wrongful termination and for age discrimination under both the federal age-discrimination laws ("ADEA") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). Rockwell asserted as an affirmative defense that Varga's termination was part of a far-reaching reduction in force ("RIF") affecting employees throughout HVS's entire organization.

Rockwell moved for summary judgment. The district court granted the motion as to the wrongful-termination claim, but denied it as to the age-discrimination claims, allowing those claims to proceed to trial. Pretrial discovery did not go smoothly, and plaintiffs filed a motion to compel the requested discovery. The motion was granted by a magistrate judge and affirmed by the district court over Rockwell's timely objections. The case was tried to a jury, which returned a verdict of "no cause for action" in favor of the defendant. The plaintiffs' motion for judgment as a matter of law or, in the alternative, for a new trial was denied by the district court and this timely appeal followed.

In this appeal, the Vargas argue that certain evidence was erroneously admitted at trial, that they were deprived of information necessary to present their claims because of Rockwell's stonewalling tactics during discovery, and that they were deprived of a fair trial. We consider each of these alleged errors in turn.

## II.

A.   *Admissibility of evidence*

1.   *Trial exhibits 79 and 80.*  Varga's direct supervisor, Larry Lemanski, was also terminated as part of the 1996 RIF. Lemanski and several other RIF'd employees sued Rockwell in a separate lawsuit for violating the ADEA.  As a witness in the Vargas' trial, Lemanski testified that he was instructed by his supervisor, Ron Rogers that (1) Rockwell wanted to eliminate the older engineers and replace them with younger engineers, so he should lower evaluation scores that year to facilitate this goal, and (2) he should rank the employees and cut out the bottom 10%.  Lemanski testified that he held Varga's work in high regard and would have ranked him in the middle as compared to the other engineers.

On cross-examination, however, Rockwell's lawyers presented Trial Exhibits 69 and 70 to Mr. Lemanski.  These exhibits were two draft, handwritten lists ranking the engineers who were under Mr. Lemanski's supervision at that time.  On both drafts, Varga was ranked 14th out of 17 engineers.  The documents noted the criteria followed by Lemanski in creating the ranking.  A note at the bottom of the page read:  "Who is doing the best in there [sic] job/classification/[illegible].  This is performance relating to position and how much is contributed to the company effort." On redirect, Lemanski explained that at the time the ranking was created, Varga was on a special assignment under Rogers and, for that reason, Lemanski had discounted Varga's performance for purpose of ranking the engineers as a whole.

It is undisputed that Trial Exhibits 69 and 70 were created during the course of Mr. Lemanski's employment with Rockwell; they were removed from the Rockwell premises by Mr. Lemanski when his employment was terminated; and Rockwell obtained copies of the documents in the course of pretrial discovery in Lemanski's ADEA suit against Rockwell.  It is also undisputed that Rockwell never produced copies of Trial Exhibits 69 and 70 in response to the Vargas' discovery requests—which included requests that Rockwell

We reversed the district court in *Benedict* because the proffered testimony was "real rebuttal evidence."  Real rebuttal evidence is evidence presented to rebut "new" evidence, and evidence is new "if, under all the facts and circumstances, . . . the evidence was not fairly and adequately presented to the trier of fact before the defendant's case-in-chief." *Id.* at 1429.

In the case before us here, however, we do not believe the rebuttal testimony plaintiffs sought to introduce constitutes "real rebuttal evidence."   The district court ruled that plaintiffs knew that Pautsch's impact study was highly relevant to their case; that plaintiffs knew that Hannon was on Rockwell's witness list, but they chose not to depose him in advance of trial to find out what he had to say; and that the testimony plaintiffs contended Pautsch would present in rebuttal was not inconsistent with the testimony plaintiffs wanted to rebut and its substance had already been presented to the jury through direct and cross examination of other witnesses.  The record supports those findings.  The district court did not abuse its discretion by denying plaintiffs the opportunity to present Pautsch as a rebuttal witness.

C.   *Judgment as a matter of law.*

A district court may grant a motion for judgment as a matter of law only if the evidence is such that "reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Toth v. Yoder,* 749 F.2d 1990, 1994 (6th Cir. 1984).  Plaintiffs argue that they should have been granted a judgment as a matter of law because the evidence in their favor was overwhelming.[2]  That is simply not the case.

---

[2]Plaintiffs also argue that they presented evidence on all the necessary elements of an age discrimination claim, and that the jury could have inferred discrimination from the evidence.  In support of their argument, plaintiffs cite precedents such as *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121 (6th Cir. 1998) (reversing denial of summary judgment).  We agree that the evidence recounted in plaintiffs' brief would be enough to withstand summary judgment, but the standard for judgment as a matter of law is much higher.  Plaintiffs' evidence is not

B.   *Rebuttal testimony*.

Plaintiffs argue that they were prejudiced by the district court's denial of their request to call Mr. Pautsch as a rebuttal witness.  Because Pautsch prepared the Adverse Impact Review for Rockwell, plaintiffs proposed to call him as a rebuttal witness to explain the source of the numbers in that analysis and to clarify the "confusing" testimony presented by Messrs. Hannon and Brown.  Although plaintiffs had deposed Pautsch, he was not on their witness list, nor had he been called as a witness by Rockwell.

We have previously considered the scope of the district court's discretion in admitting rebuttal evidence at trial.  *See Benedict v. United States*, 822 F.2d 1426 (6th Cir. 1987).  In *Benedict*, the plaintiffs argued they should be allowed to present an expert on rebuttal because the trial testimony of defendant's expert (in 1986) contradicted his earlier 1980 opinion.  The defendant argued that the plaintiffs should have been on notice, as early as 1983, that the expert's opinion had changed.  The district court ruled that the rebuttal testimony would not be allowed because it logically belonged in the plaintiffs' case-in-chief.

In evaluating the propriety of the district court's ruling, this court explained:

> A trial judge's determinations regarding the order of proof and scope of rebuttal testimony will not be disturbed absent an abuse of discretion . . . .  In the exercise of sound discretion, the district court may limit the scope of rebuttal testimony, to that which is directed to rebut new evidence or new theories proffered in the defendant's case-in-chief.  However, "[w]here . . . [the] evidence is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal. Furthermore, with respect to 'real rebuttal evidence,' the plaintiff has no duty to anticipate or to negate a defense theory in plaintiff's case-in-chief.

*Id.* at 1428.

produce "any and all documents including, but not limited to, inter- and/or intra-office documents, relating to the layoff and termination of Raymond Varga" and "any and all documents containing an analysis of plaintiff and/or comparison of plaintiff to other employees, which served as a basis for a decision to layoff and/or terminate Raymond Varga." Finally, it is undisputed that the plaintiffs noticed a subpoena duces tecum to Rockwell, specifically asking for "any memoranda, notes, or other documents referring to the implementation of defendant's RIF plan that resulted in plaintiff's separation on August 26, 1996;" that Gregory Brown was Rockwell's corporate designee in response to the subpoena; that during Brown's deposition, it became apparent that he had not produced all of the documents requested; that the district court, ordered the defendants to provide "all of the documents identified at Mr. Brown's deposition, to the extent they exist;" and that these two documents were not produced in response to that order.

The plaintiffs argue in this appeal that they were unfairly prejudiced by Rockwell's failure to produce these documents before trial, and the district court's decision to allow Rockwell to use the exhibits at trial is reversible error.  Rockwell counters that it had no obligation to produce the documents because it viewed them as usable solely for impeachment purposes.  As we shall explain below, plaintiffs' claim of error is meritless.   But we will first address Rockwell's argument, which  is so devoid of merit as to be specious.

The Federal Rules of Civil Procedure allow litigating parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." FED. R. CIV. P. 26(b)(1).  The rules are broad, and litigants are required to comply with all properly propounded document requests. FED. R. CIV. P. 34. While it is arguable that Lemanski's lists were not identified at Brown's deposition, Trial Exhibits 69 and 70 clearly fall within the plaintiffs' original document request, and Rockwell was obligated to produce them.

In support of its decision to hold back the documents, Rockwell cites *Macivor v. Southern Pacific Transp. Co.*, No. 87-6424-E, 1988 WL 156743 (D. Or. Jun. 9, 1988). This unpublished, district court opinion is not precedential authority in this Court. More importantly, the case is wholly inapposite. In *Macivor,* the plaintiff-employee, who was suing his employer for damages related to an alleged on-the-job injury, propounded an interrogatory asking if the employer had conducted any secret surveillance of the plaintiff. *Relying on a local rule* that specifically removed such records from discovery *in personal injury cases*, the district court held that the surveillance films were not discoverable. Therefore, Rockwell's out-of-context quote from *Macivor* – ". . . [t]he only practical way to preserve the prophylactic effect of impeachment evidence . . . is to keep its existence as well as its contents unknown" – is not only not persuasive, it is misleading.

The paucity of authority to support Rockwell's contention is telling. At oral argument, counsel for Rockwell was asked to explain the absence of cases supporting his rule that a party served with specific discovery requests may withhold otherwise relevant evidence if that party unilaterally concludes that the only useful purpose for the evidence at trial is impeachment. Counsel responded that the lack of published cases suggests that Rockwell's rule is one that is universally accepted among all trial lawyers and judges alike. That response was a fine debate technique, but it is nonsense. The reason there are no cases to support Rockwell's evidentiary proposition is that it is patently wrong. We take this occasion to emphasize what Rule 26(b) makes perfectly clear: the recipient of a properly propounded document request must produce all responsive, non-privileged documents without regard to the recipient's view of how that information might be used at trial. A party may not, under any circumstances, hold back materials responsive to a proper

by the parties during negotiations. The difference, however, is simply not material. The district court held that the jury would not reasonably have concluded that the language referred to anything other than the specific discovery materials to which the remainder of the stipulation was directed. We find no abuse of discretion in that ruling.

4.   *The missing headcount forms*. On appeal, plaintiffs complain that during discovery they requested copies of certain "Headcount Reduction Forms;" that Mr. Brown testified that one such form was completed for each RIF'd employee; and that plaintiffs still have not received copies of those forms. At various times throughout the trial, however, in response to plaintiffs' complaints that some of these forms had not been produced, the district court observed that the information contained on these "headcount forms" in general was minimal, and information which would have been contained in the forms not produced was contained in Trial Exhibit 28. We have reviewed the headcount forms that Rockwell did produce during discovery, and we conclude that the district court's observations were entirely correct. We find it highly unlikely that Rockwell's failure to produce some of these documents altered the outcome of the Vargas' trial. Moreover, the Vargas could and should have raised this issue during pretrial discovery, when a motion to compel could have been considered by the district court, and any failure by Rockwell to produce the documents could have been cured. We find no abuse of discretion here.

We pause to make one additional comment. We have exhaustively reviewed the record before us, and find the bickering between counsel for Rockwell and counsel for the Vargas throughout the pretrial discovery and at trial was remarkable. It is clear that the district court was confronted with unusually contentious counsel, and we commend him on the enormous restraint he exercised in presiding over this matter.

people listed in Exhibit 19 were in fact included in the reduction in force. So, Exhibit 19 is exactly the same as before Mr. Brown testified.

The court then asked, "Does that accurately reflect the agreement, Ms. Guerra [plaintiffs' counsel]?" She responded, "Just the first point I think was a little broader than we had agreed. If we could sidebar." The court denied her request for an immediate sidebar and deferred the issue until the next break. When the court returned to the issue, plaintiffs' counsel complained that during the negotiation of the stipulation, the language about the first point had been that Rockwell's responses to discovery requests had been "appropriate," but in the stipulation the court had said that Rockwell had complied with all of the discovery requests. The court flatly responded that the stipulation had been limited to the subject of the discovery surrounding the voluntary retirements.

On appeal, plaintiffs reassert the dispute regarding Brown's testimony that the stipulation had purported to resolve, and they challenge the accuracy of the stipulation as it was read to the jury. Rockwell responds that the stipulation is binding, and there is no basis for this Court to consider plaintiffs' claim on appeal.

In this Circuit, "[s]tipulations voluntarily entered by the parties are binding, both on the district court and on us." *Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir. 1991). It is clear from the transcript of the proceedings that plaintiffs' counsel was an active participant in drafting the stipulation and that she agreed to the substance of the stipulation with regard to the "voluntary" versus "involuntary" early retirement evidence. Plaintiffs are therefore bound by that portion of the stipulation, as are we, and there is no merit to their complaint that the district court erred in reading it to the jury. Further, the record reflects that the language of the stipulation regarding Rockwell's response to plaintiffs' discovery requests was not exactly the same as the language discussed

discovery request because it prefers to use the evidence as surprise impeachment evidence at trial.[1]

That said, however, the ultimate question we must consider is not whether Rockwell wrongly withheld the documents, but whether the district court—which was never presented with that question—committed reversible error by allowing Rockwell to use Trial Exhibits 69 and 70 to cross-examine Lemanski. During the trial, when Rockwell offered these documents into evidence, plaintiffs' counsel made no mention of the documents' not having been provided during discovery; although counsel objected to the fact that the documents had no dates on them, once the time frame was established, she made no other objection to either their use or their admission. In fact, as to Trial Exhibit 70, the district court specifically asked plaintiffs' counsel if she had any objection, and she said, "no."

The general rule for reviewing evidentiary rulings on appeal is that a party "may not assert as error the introduction of evidence unless a timely objection is made." *Helminksi v. Ayerst Labs.*, 766 F.2d 208, 211 (6th Cir. 1985). Because plaintiffs failed to object at trial, they may not complain about the admission of these exhibits now.

2. *Testimony of Patrick Hannon*. At trial, Rockwell's Human Resources officer, Patrick Hannon, testified—without reference to any documentation—about various statistics related to the age impact of the RIF. Plaintiffs' counsel objected to the testimony because she had not been provided with the documents supporting it. In fact, the only documentation with regard to this statistical information that Rockwell provided plaintiffs prior to trial was an Adverse Impact Review prepared by a Mr. Pautsch, showing a

---

[1] Rockwell's post-argument attempt to justify its failure to disclose these properly requested documents on the basis of *Halbasch v. Med-Data, Inc.*, 192 F.R.D. 641 (D. Or. 2000), a case dealing with Rule 26(a)(3)'s exception to the automatic disclosure requirements for evidence to be used "solely for impeachment purposes," is disingenuous at best.

breakdown of Rockwell's work force by age before and after the RIF.   Pautsch's discovery deposition contains his testimony that the Adverse Impact Review was the only documented study that Rockwell conducted; however, plaintiffs' counsel never inquired of him whether there were other, undocumented studies undertaken by Rockwell in connection with the RIF. And although Hannon was included on Rockwell's witness list prior to the close of discovery, plaintiffs' counsel did not attempt to take his deposition. The district court reserved ruling on the issue of whether Rockwell had failed to comply with plaintiffs' discovery request seeking relevant statistics, permitted Hannon to continue to testify from memory about the age-related impact statistics, and allowed the plaintiffs to cross-examine him with regard to the documentation for that testimony.

Rockwell argues it was under no obligation to provide plaintiffs with details of Mr. Hannon's undocumented study because the plaintiffs asked for documents.   Further, Rockwell claims that the issue has been waived because plaintiffs neither filed a motion to strike the testimony nor preserved the issue for appeal.   As with the Lemanski documents, we believe that plaintiffs waived their right to pursue this issue on appeal.   But, even if the argument was not waived, we would find that it is without merit. Rockwell included Hannon on its witness list, and plaintiffs received that list before the close of discovery.   During the trial, the district judge investigated plaintiffs' allegations of unfair surprise, found them to be without merit, and allowed the testimony to continue.   The district court did not abuse its discretion here.

3.   *Testimony of Gregory Brown*.   During the trial, a dispute arose surrounding the testimony of Mr. Brown relating to certain documents provided by Rockwell. On the first day of his testimony, Mr. Brown testified about Trial Exhibit 19, a list of employees who were laid off at the same time Ray Varga was.   Mr. Brown testified that of the twenty names on Trial Exhibit 19, ten of them took a voluntary early retirement.

Mr. Brown returned to court the following day and testified that he checked his records overnight and was mistaken in his testimony from the day before.   He explained that in order to obtain their pension benefits immediately, several employees who had been selected for layoff applied for early retirement status, and he confirmed that Rockwell's records do not distinguish between those who voluntarily sought early retirement and those who elected early retirement after being selected for layoff.

Plaintiffs' counsel argued that because four of the "early retirement" terminations were plaintiffs in Lemanski's separate lawsuit against Rockwell for age discrimination, at least those four must not have sought early retirement voluntarily.   She claimed this new information was unfairly prejudicial because her statistical expert had left all early retirement employees out of his calculations, assuming those had been voluntary terminations.   She argued that because early retirement was available only to those employees age 55 and older, the statistics calculated by her expert—reflecting older workers who were involuntarily terminated— were too low.   She also argued vigorously that she had been sandbagged by Rockwell's discovery abuses.

After much discussion, the parties settled the dispute by agreeing to a stipulation that the judge read to the jury:

> [T]he attorneys have stipulated . . . One is that all of the discovery orders and requests have been complied with prior to trial.   So, that's not a concern of yours.

> As to the second point, when Mr. Brown testified yesterday and talked about early retirement, he indicated that the computer elected early retirement – or showed early retirement for ten people, because that was the last entry or employment action which was taken with respect to each of the employees, the four employees.   They were, in fact, included in the reduction in force and were laid off prior to electing the early retirement, and therefore there's no need for Mr. Brown to be called back as a witness.   And you should take Exhibit 19 as all the