**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0591n.06

**Case No. 13-6275**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| REGINALD ALAN DAVIS, | ) | **FILED** |
|  | ) | Aug 04, 2014 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| CITY OF MEMPHIS FIRE DEPARTMENT, | ) | DISTRICT OF TENNESSEE |
|  | ) |  |
| Defendant-Appellee. | ) |  |
|  | ) | O P I N I O N |

BEFORE:   COLE, ROGERS, and ALARCÓN, Circuit judges.[*]

COLE, Circuit Judge.  Lieutenant Reginald Davis appeals the judgment entered on a jury verdict in favor of the City of Memphis Fire Department ("the City") and various city officials. At trial, Davis argued that the City violated his First-Amendment right to freely discuss matters of public concern when the City terminated his employment in the wake of a series of media interviews he gave regarding fire safety at the Memphis International Airport.  On appeal, Davis argues that the district court prejudiced his case by not issuing his proffered jury instruction, by refusing to allow him to recall a favorable witness to offer rebuttal testimony, and by excluding the testimony of a separate witness on relevancy grounds.  Because the district court did not abuse its discretion in any of these matters, we affirm.

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

## I.  BACKGROUND

Lieutenant Reginald Davis served as firefighter for the City of Memphis for over twenty years.  Beginning in 2010, his employment relationship began to deteriorate over a series of personnel disputes and temporary duty reassignments.  Ultimately, the City terminated Davis's job after his attorney alleged, in a series of newscasts, that the City had jeopardized public safety by assigning unqualified firefighters to a fire station at the Memphis International Airport.  Davis sued the City and various city officials under Section 1983, and he proceeded to a jury trial on his claim that the City violated his First-Amendment right to freely discuss matters of public concern (i.e., public safety at the airport).  The jury found against Davis and concluded that the City had not violated his rights because Davis, through his attorney, made false (and therefore unprotected) speech regarding public safety at the airport.  Davis appeals the judgment entered on that verdict and argues that the district court erred by (1) denying his request for a particular jury instruction; (2) precluding him from recalling a witness; and (3) excluding a witness who would have testified about the credibility of a non-testifying witness.

## II.  ANALYSIS

Davis challenges three of the district court's rulings.  We address each of his arguments in turn.

### A.  Jury Instructions

Davis first challenges the district court's jury instructions.  He argues that the court erred by failing to include the legal definition of the term "assault" when charging the jury with determining whether Davis's media statements were false (and therefore unprotected) speech.  We disagree because the jury instructions, when viewed as a whole, fairly and adequately set forth the issues and applicable law.

We review a district court's jury instructions for an abuse of discretion. *United States v. Beaty*, 245 F.3d 617, 621 (6th Cir. 2001). We will reverse a judgment based upon a particular jury instruction "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999) (internal quotation marks omitted).

Here, Davis's argument regarding the jury instructions falls short because he erroneously latches onto the jury's verdict form without considering the totality of the jury instructions. Indeed, the district court issued a twenty-seven-page set of jury instructions in addition to the verdict form on which Davis relies so heavily. Those instructions fairly and adequately set forth the issues and governing law. For example, the court explained the governing law on protected speech and Davis's burden of persuasion as follows:

> The First Amendment to the United States Constitution gives persons a right to free speech. Government employees have a limited right to engage in free speech on matters of public importance, and government employers must not retaliate against their employees for exercising this right. In this case, Mr. Davis claims that, through his attorney, he spoke about safety issues at Memphis International Airport and that the City of Memphis retaliated against him by terminating his employment.
>
> In order to find for Mr. Davis on his First Amendment claims, you must find each of the following established by a preponderance of the evidence presented to you:
>
>> 1. Mr. Davis engaged in constitutionally protected conduct. In this regard, the Court has determined that the statements attributable to Mr. Davis, if true, involved matters of public concern. However, the City of Memphis contends these statements were false and made with either knowledge of their falsehood or with reckless disregard for the truth. This is for you, the jury, to decide.
>
> . . .

(Jury Instructions, R.193, PageID 1326.)

The court then described the City's affirmative defense as follows:

> The City of Memphis claims that the statements attributable to Mr. Davis that were made to the media through his attorney were false, and made with either knowledge of their falsehood or with reckless disregard for the truth. As it relates to the City of Memphis' contention only, the burden is on the City of Memphis to demonstrate by a preponderance of the evidence that the statements attributable to Mr. Davis were false and made with knowledge of their falsehood or with reckless disregard for the truth. In that regard, you should apply the same standard for determining whether the City has demonstrated by the preponderance of the evidence that the statements were false and made with knowledge of their falsehood or reckless disregard for the truth. Remember that to prove an allegation by the preponderance of the evidence, a party must convince you that the allegation is more likely true than not. This is for you, the jury, to decide.

(*Id.* at 1327.)

Only then, in addition to the instructions just provided, did the district court provide a verdict form to walk the jurors through the elements of Davis's claim and the City's affirmative defense. That form asked the jury, in relevant part, "Has the City of Memphis shown by the preponderance of evidence that Mr. Davis, through his attorney, knowingly or recklessly made false statements regarding fire safety at Memphis International Airport *and an alleged assault against him by [Fire Chief] Daryl Payton*?" (Verdict, R.181, PageID 1304) (emphasis added).

Davis points to the final clause from that question and contends that because the court charged the jury with determining whether his statements regarding an alleged assault were true, the court was required to include the legal definition of assault in its jury instructions. At bottom, Davis urges us to consider that lay jurors may not understand that an assault can stem from something as minor as causing "physical contact with another" that a reasonable person would find "extremely offensive or provocative." *See* Tenn. Code § 39-13-101(a)(3). Davis reasons that because "[t]he average person perceives an assault as a violent attack," the court was required to clarify that something less could still constitute an assault, thereby rendering his statements regarding the altercation with Chief Payton true.

Davis overlooks two key points. *First*, the district court repeatedly emphasized that whether an assault occurred was not the focus of Davis's First-Amendment claim or the City's affirmative defense. Rather, the focus of the trial was whether Davis's statements regarding public safety at the Memphis International Airport were true. The court allowed Davis to rely on his statements regarding Chief Payton's alleged assault only because the altercation occurred in connection with a meeting regarding safety issues at the airport (i.e., only because those statements might have involved matters of public concern, however tangentially). Including the elements of assault in the jury instructions would have confused the jury as to its role in ferreting out the truth of Davis's statements regarding public safety at the airport.

If anything, the district court erred by including the final clause in the first question of the jury-verdict form at all. Even so, this was at most a harmless error given that the jury was still required to find that Davis's statements regarding public safety at the airport were false to rule in the City's favor. *See O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 502 (6th Cir. 1992) ("When instructions are challenged on appeal, our duty is not to read the instructions word for word in search of an erroneous word or phrase."). In other words—even crediting Davis's argument by assuming that the court should have instructed the jury on the elements of assault, and further assuming that if those elements had been included, the jury would have determined that Davis's statements about the alleged assault were true—the outcome of the trial would not have changed because the court charged the jury with determining whether the statements made during *both* media interviews were true.

*Second*, the evidence Davis presented regarding the alleged assault more closely resembles a violent attack than a mere offensive touching. Davis repeatedly characterized the alleged assault as a "violent struggle." Davis testified as follows:

> I left the bed hall and it became a struggle. . . . Daryl Payton is all over me at this point, coming over the top of me, coming around me, trying to wrestle the phone away from me . . . . But it was a violent struggle, not once, but twice to try to fend this man off. . . . So I tried again to call and again it was a violent struggle . . . . And all along he's still grabbing, and I'm twisting and turning, [saying] "Just please keep your hands off me, get your hands off me, please."

Davis's testimony undercuts his argument on appeal that lay jurors may have misunderstood the definition of assault. Davis himself characterized the incident as a violent struggle. Not once did he suggest that Chief Payton's conduct involved mere offensive touching. Accordingly, the jury-verdict form was not "confusing, misleading, or prejudicial," and therefore, it did not constitute reversible error. *See, e.g.*, *Harrod*, 168 F.3d at 892.

**B. Precluding Davis from Recalling James Chastain as a Witness**

Davis next challenges the district court's evidentiary determination as to one of his testifying witnesses, James Chastain. Davis argues that the court erred by not permitting him to recall Chastain (who served as a firefighter at the airport) to the stand after one of the City's witnesses impeached Chastain's previous testimony regarding his firefighting certifications. We disagree because Davis's sole purpose in recalling Chastain was to have Chastain repeat his earlier testimony jot-for-jot. Thus, the district court properly exercised its discretion in precluding Chastain from testifying again.

We review a district court's evidentiary determinations for an abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994). Specifically, we will not disturb a district court's "determinations regarding the order of proof and scope of rebuttal testimony" absent an abuse of discretion. *Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir. 1987); *see United States v. Levy*, 904 F.2d 1026, 1031 (6th Cir. 1990).

During Davis's case-in-chief, he called Chastain to testify about his firefighting certifications while assigned to a fire station located at the Memphis International Airport. Chastain testified that although he was fully qualified to fight structural fires, he lacked a level-three certification badge, which permitted him to access the runways, taxiways, and other "movement areas" of the airport. During the City's case-in-chief, the City called Larry Fletcher to testify. At the time of trial, Fletcher was a division chief at the Air Rescue Firefighting Division at the Memphis International Airport and thus had oversight of Chastain's station. Fletcher testified that, contrary to Chastain's prior testimony, Chastain held a level-three certification badge at all relevant times that he was assigned to Fire Station 33.

Davis sought to recall Chastain as a rebuttal witness to challenge Fletcher's testimony. But upon inquiry by the court, Davis's attorney conceded that Chastain would offer no new testimony.

THE COURT: Why are you bringing back Mr. Chastain?

MS. GARNER: They have introduced this witness to say that he is -- that he was certified on his Level 3 badge in 2011. Mr. Chastain has proof that he was not.

THE COURT: I thought he already testified to that.

MS. GARNER: He did testify that he wasn't.

THE COURT: Why would we ask him to come back and testify again? I mean the jury decides who they believe, Chastain or Fletcher.

MS. GARNER: That is correct.

THE COURT: I'm just saying it appears he's already testified to what you are going to ask him again, and that's not permissible.

MS. GARNER: Your Honor, Chastain testified that David Whitaker was his supervisor, not Mr. Fletcher.

THE COURT: That was brought out in his examination.

MS. GARNER: It's a credibility issue, Your Honor.

THE COURT: I agree, and you can argue that. Certainly you laid the foundation to argue that to the jury, but I can't allow one witness to testify twice just to try to bolster his testimony.

(Trial Tr., R. 191, PageID 2233–34.)

Based on the colloquy between the district court and Davis's attorney, it seems clear that recalling Chastain to the stand would have served no purpose other than to repeat his prior testimony verbatim. The Federal Rules of Evidence grant district courts wide latitude to exercise control over the mode of examining witnesses so as to "make those procedures effective for determining the truth" and to "avoid wasting time." Fed. R. Evid. 611(a)(1)-(2). Here, the jury heard competing testimony regarding Chastain's firefighting certifications from both Chastain and Fletcher. Permitting Chastain to repeat his earlier testimony would have wasted time and would not have "rebut[ted] new evidence or new theories proffered in the defendant's case-in-chief." *Benedict*, 822 F.2d at 1428. Accordingly, the district court properly exercised its discretion by precluding that testimony. *See id.*

## C. Excluding Paul Boyd's Testimony

Finally, Davis challenges the district court's decision to prohibit Paul Boyd, the Shelby County Probate Court Clerk, from testifying at trial. Davis argues that the court erred by refusing to allow Boyd to testify regarding the credibility of Battalion Chief Sandra Richards. We disagree with this argument, for which Davis offers threadbare support, because Chief Richards did not testify at trial herself. Therefore, her credibility was wholly irrelevant to Davis's First-Amendment claim and the City's affirmative defense.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. We review a district court's exclusion of evidence on the grounds of relevancy for an abuse of discretion. *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998).

Davis attempted to call Boyd to testify at trial. Through Boyd, Davis sought to introduce into evidence the May 2011 findings of fact and conclusions of law of a probate-court judge in a contested will action involving Chief Richards and a deceased firefighter, Ulysses Jones, Jr. Specifically, Davis hoped to introduce evidence that just two months before he was fired, Chief Richards was found by the probate judge to be guilty of perjury, which would bear upon her credibility. The City objected on relevancy grounds by pointing out that Chief Richards's credibility bore no relation to Davis's First-Amendment claim or the City's affirmative defense, that Chief Richards was no longer a party to Davis's lawsuit, and that neither party wished to call her to testify at trial. The district court agreed with the City and determined that unless Davis called Chief Richards to testify, her credibility was irrelevant to his claim, and Davis could not call Boyd as an impeaching witness.

We are at a loss to see how Chief Richards's credibility was relevant in any way to Davis's First-Amendment claim or the City's affirmative defense. At best, it seems that Davis simply mistrusted Chief Richards due to their previous interactions and personnel disputes. But Davis's personal animosity towards Chief Richards does not bear on the relevance of her credibility. Whether she committed perjury in a separate court case does not make it more or less probable that *Davis's* statements regarding fire safety at the airport were true. Accordingly, the district court did not abuse its discretion in refusing to allow Boyd to testify.

## III. CONCLUSION

For these reasons, we affirm the district court's judgment.